**Carl Lemon MULLINS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 11257.**

United States Court of Appeals
Fourth Circuit.

Argued June 20, 1967.

Decided Aug. 29, 1967.

John J. Kirby, Jr., Charlottesville, Va. (Court-assigned counsel), for appellant.

William M. Styles, Asst. U. S. Atty. (William Medford, U. S. Atty., on brief), for appellee.

Before BOREMAN, BRYAN and WINTER, Circuit Judges.

BOREMAN, Circuit Judge:

On March 10, 1966, Carl Lemon Mullins was tried and convicted by a jury in the federal District Court at Asheville, North Carolina, for a violation of the Dyer Act. 18 U.S.C. § 2312. He was sentenced by the court to serve three years in prison. No appeal was taken from this judgment and sentence. However, on June 29, 1966, Mullins filed with the sentencing court a motion pursuant to 28 U.S.C. § 2255 requesting that his sentence be vacated. After a hearing at which Mullins was neither present nor represented by counsel, his motion was denied in a memorandum decision issued on October 25, 1966. On November 4, 1966, Mullins noted his appeal and sought permission to proceed in forma pauperis. However, on November 10 he moved to withdraw his appeal so that he could file what he intended as an amended motion under section 2255. On November 18 he filed such motion and this was denied on November 28, 1966. On December 5, 1966, notice of appeal was given. The basis of the prisoner's petition is that the District Court denied him due process in failing to independently determine the voluntariness of three confessions intro-

duced against him at trial, and that two of these confessions should have been excluded by virtue of the *McNabb-Mallory-Upshaw* rule. We reverse and remand for a new trial.

Mullins was convicted of interstate transportation of a motor vehicle which the Government alleged was stolen from Alma, Georgia, driven first to Bluefield, West Virginia, and finally to Burnsville, North Carolina, where it was abandoned. Defendant did not testify at his trial and introduced no evidence. The Government's case against him was based primarily on the testimony of three witnesses.

Sergeant Arendale of the Asheville Police Department testified that on November 20, 1965, Mullins came to the police department and told him that he (Mullins) had been working in Alma, Georgia; that he had taken a car from his boss, Broughton Bennett, about ten days before; that he had taken the car without Bennett's authority, and had driven it to Bluefield, West Virginia, where he met a woman at a bar; that he had been drinking, had checked into a hotel and while in the hotel someone had stolen the car from him. The officer's testimony concerning Mullins' statement was objected to by defendant's trial counsel. Upon objection the court permitted counsel to ask the officer if he had advised Mullins of his right to counsel and his right to remain silent. When the officer stated that he had so advised Mullins, defense counsel attempted to establish that Mullins was so drunk that he was unable to comprehend any advice of this nature. At this juncture the court asked the officer whether the defendant was rational and coherent at the time he made the statement and the officer stated that he was. Defense counsel was not permitted to pursue this line of questioning. During this entire colloquy the jury was present. Subsequently, on cross-examination, Arendale admitted that Mullins had been given a drink of whiskey after he made his statement in order to steady him. Arendale further testified that after Mullins had made this statement he (Arendale) inquired through police channels and learned that a car had been stolen and that a warrant for defendant's arrest had been issued in Alma, Georgia.

A North Carolina highway patrolman testified that on November 20, 1965, he discovered the automobile in question on a North Carolina highway close to the Tennessee line and that the vehicle was in a badly burned condition.

The Government's final witness was Special Agent Moore of the F.B.I. He had been called into the case by the Asheville police when it was discovered that the vehicle had been stolen in Georgia. Moore testified that he spoke with Mullins on the afternoon of November 20, 1965, the same day defendant came to the police station and had been placed under arrest. Moore further testified that he advised Mullins of his right to counsel and of his right to remain silent; that Mullins made a statement which was reduced to writing and which Mullins then signed. The statement was then read to the jury. In the statement Mullins admitted that he had taken the car, without permission, and had driven from Georgia to Bluefield, West Virginia; that after a night of drinking he had checked into a hotel and when he awakened the car had been stolen from the lot where he had parked it. Appearing in the statement were admissions by Mullins to the effect that he made the statement voluntarily, after being advised of his right to counsel and his right to remain silent. No objection was made by defense counsel to the introduction of this statement.

Special Agent Moore testified further that he spoke to Mullins on November 23, 1965, at which time Mullins made an additional statement. A federal warrant had been issued for Mullins' arrest on November 22, 1965. However, Mullins was not taken before the United States Commissioner until November 23, 1965. According to Moore, at the time he spoke to Mullins on November 23, 1965, defendant told him that the car had not been stolen from him in West Virginia but

that he had driven it to North Carolina. Defense counsel objected to the admission of this oral confession (the second oral and in all the third statement made by Mullins), but this was overruled by the court without comment.

In his section 2255 petition Mullins presented a different version of the facts. He alleged that he had permission to use the car, that he had been drunk and suffering from delirium tremens, that he had gone to the police station for help, that he had been promised whiskey if he confessed, that he was given whiskey after he confessed, as promised, that he had been tricked into signing a confession, and that he had been denied the right to consult counsel.

The defendant contends that since the court failed to hold an independent hearing, without the jury, in order to determine the voluntariness of his statements, as provided by Jackson v. Denno and United States v. Inman, his conviction must be reversed. The United States counters by arguing that this case is to be distinguished from those authorities because the defendant was not arrested but voluntarily presented himself at the police station.

In Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), the Supreme Court outlined a procedure to be employed in determining whether a defendant's confession which was about to be offered in evidence against him at his trial was voluntary. Under consideration there was the "New York rule" which permitted the trial court, after the voluntariness of a confession was questioned, to submit that issue to the jury along with the other issues in the case. Under the New York procedure the jury was told that if it found the confession involuntary, it should disregard the confession entirely and determine guilt or innocence from the other evidence in the case; alternatively, if the jury found that the confession had been made voluntarily, it was to determine its truth and reliability. The Court condemned this practice because "the evidence given the jury inevitably injects irrelevant and im-

permissible considerations of truthfulness of the confession into the assessment of voluntariness." 378 U.S. at 386, 84 S.Ct. at 1786. Disapproving the "New York rule," the Court prescribed a procedure which demanded that before the issue of the voluntariness of a confession could be submitted to the jury the trial court must make its own independent determination that the confession was voluntary. See Sims v. State of Georgia, 385 U.S. 538, 544, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967). To do so it is necessary that the court excuse the jury and hold a hearing in which evidence presented by the opposing sides can be received. At this hearing out of the presence of the jury the defendant can give his version of the facts leading up to and surrounding the making of his alleged confession without fear of impeachment or broad cross-examination to his prejudice.

 In United States v. Inman, 352 F.2d 954 (4 Cir. 1965), decided more than three months prior to Mullins' trial, we heeded the Supreme Court's teaching in Jackson v. Denno, and laid down specific rules to be followed by the federal courts in this circuit whenever a confession is proffered by the Government. We pointed out that the procedure must be followed *"even though there be no objection"* interposed by defendant. 352 F.2d at 956. (Emphasis added.) Upon the proffer of the confession the jury must be withdrawn and evidence taken upon the confession and its factual setting. The defendant is free to testify and he may be cross-examined only as to the origin and character of the confession, not upon his innocence or guilt. After hearing such evidence the court will decide whether the confession is voluntary. "In this determination the District Judge will evaluate the evidence to ascertain whether, after resolving any conflicts therein, it convinces him beyond a reasonable doubt that the confession was voluntary." 352 F.2d 956. If the District Judge does not determine that the confession is voluntary it may not be admitted. If he is satisfied that it is

voluntary he must make and include in the record a finding of that fact. Furthermore, we held in *Inman* that if the court determines that the confession is voluntary it must then instruct the jury, whether requested or not, that before giving any weight to the confession, the jury must be satisfied beyond a reasonable doubt that it was made voluntarily. See Stevenson v. Boles, 331 F.2d 939 (4 Cir.), aff'd and modified, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109 (1964).

█ In the instant case the court did not hold an independent hearing to determine the voluntariness of defendant's confessions before they were submitted to the jury, as commanded by the clear and explicit holding in *Inman.* Nor was the jury instructed that it must find that defendant's confessions were voluntary before it could consider them as bearing upon his guilt or innocence.[1] The Government's attempt to distinguish the instant case from *Inman* on the basis of the fact that Mullins came voluntarily to the police station and freely made such statements ignores the clear teaching of this court in *Inman,* which requires both an independent hearing when a confession is proffered and a specific instruction to the jury on the issue of voluntariness even though there be no objection or request by defense counsel. This is the law in this circuit and is to be followed in all its details in criminal trials in the district courts where confessions are involved.

Had the trial court failed only with respect to the direction to conduct an independent hearing to satisfy itself of the voluntariness of the confessions, a new trial would not be necessary since the case could be remanded for a hearing as to the voluntariness of the statements. If the statements were found upon remand to be voluntary then defendant's conviction would stand. See Jackson v. Denno, 378 U.S. at 394, 84 S.Ct. 1774. However, the court below failed to instruct the jury that it had a duty to resolve the issue of voluntariness before considering the confessions in relation to Mullins' guilt or innocence. In *Inman* the jury was not so instructed although the court had made its own independent determination of voluntariness. Because the court failed to so instruct the jury a new trial was ordered. The failure to properly charge the jury in the instant case is so vital that it overrides the provision in Rule 30 F.R.Crim. P. requiring objections to any portion of the charge or *omission* therefrom be made before the jury retires. See United States v. Inman, supra, 352 F.2d at 956.

We hold that Mullins' conviction and sentence must be vacated and that he be given a new trial consistent with our views expressed herein and in United States v. Inman.

At the new trial the court should be prepared to dispose of the contention, if made, that the *McNabb-Mallory-Upshaw* rule requires the exclusion of both confessions made to Special Agent Moore. Counsel for defendant conceded in argument that the record has not been adequately developed in this regard and, therefore, we express no opinion on this issue. However, if the question is raised at the new trial the court should hold a hearing, take evidence, make explicit findings of fact and state its conclusions in order to build a complete record available for purposes of review if the occasion should arise.

Reversed and remanded.

---

1. On appeal counsel for Mullins states in his brief that the trial transcript did not contain the charge to the jury and that there is no indication that the jury was properly instructed on the receipt of the confession. In its brief the Government admitted that the jury was not instructed that it must find the confessions voluntary before considering them as to innocence or guilt. Mullins' allegation that the confessions were involuntary and his argument that the teachings of Jackson v. Denno and Inman were violated is sufficient, under these circumstances, to place this issue before us.