**Walter Darrell MORRIS, Appellant,**

v.

**Otto C. BOLES, Warden of the West Virginia State Penitentiary, Appellee.**

**No. 11247.**

United States Court of Appeals Fourth Circuit.

Argued May 29, 1967.

Decided Oct. 25, 1967.

---

George A. Daugherty, Charleston, W. Va., for appellant.

Leo Catsonis, Asst. Atty. Gen., of West Virginia (C. Donald Robertson, Atty. Gen. of West Virginia, and Fred M. Frisk, Jr., Asst. Atty. Gen., of West Virginia, on brief), for appellee.

Before BOREMAN, BRYAN and WINTER, Circuit Judges.

WINTER, Circuit Judge:

The petitioner, a former employee of a supermarket, who was convicted of grand larceny and embezzlement of a substantial quantity of its merchandise, appeals from the denial of a writ of habeas corpus, refused without plenary hearing but after full consideration of the record of proceedings of the state court in which petitioner was convicted.[1] Concededly, petitioner has exhausted available state remedies.[2] Petitioner complains of the validity of a search, initially made under warrant, the validity of which is sought to be sustained as an incident to lawful arrest, which produced physical evidence used to convict him; the failure of the trial judge to submit the issue of the voluntariness of certain admissions and a written confession to the jury in accordance with the so-called "Massachusetts rule;" and alleged suppression of evidence, sometimes stated as an unconstitutional denial of the right to impeach the crucial testimony of an arresting officer. We deem the district judge's resolution of these issues correct, and we affirm.

Early in 1964, the unexplained disappearance of substantial quantities of merchandise at the North Charleston Kroger store generated an investigation and observance of petitioner for about a month and a half prior to his arrest. The investigation was carried on by store officials and the police. On March 19, 1964, the day prior to his arrest, a police officer observed petitioner place certain items in his coat pocket and remove a marked case of Joe Fazio's spaghetti sauce. The next day, by prearrangement, a police officer was stationed in a panel truck behind petitioner's station wagon on the parking lot, and, when the assistant manager of the store observed petitioner put merchandise into a bag, conceal it and leave the store, he signaled the police officer, who arrested petitioner as he prepared to place the goods in the station wagon.

The contents of the bag were dumped upon the parking lot immediately after the arrest, and petitioner made certain statements and admissions. A partial search of petitioner's vehicle was made but, because a number of people had been attracted to the scene and for the convenience of the police, petitioner was requested to drive his vehicle to the police station, a distance of two or three miles, where the search was completed and the evidence seized.

At police headquarters, petitioner made additional statements and admissions, and approximately an hour after his arrest signed a written, inculpatory statement. He also consented to a search of his home and executed written permission therefor. This search uncovered an additional $2,418.80 worth of Kroger merchandise.

In a pretrial motion, petitioner attacked the validity of the warrant purporting to authorize the search of his station wagon and, at the trial continued the attack on different grounds. The

1. The district judge, being of the view that petitioner had obtained a full and fair evidentiary hearing at his original trial, that all material facts were developed there, and that the record fully supported the state court's factual determination of petitioner's various contentions, did not extend the scope of his inquiry beyond the state court record. He relied on Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), as authority for his action. See also, 28 U.S.C.A. § 2254(d), as amended by P.L. 89-711, 80 Stat. 1104.

2. Petitioner was convicted in the Intermediate Court of Kanawha County, West Virginia. After he was sentenced he sought and was denied a writ of error and supersedeas in the Circuit Court of Kanawha County, and he sought and was denied a writ of error and supersedeas from the Supreme Court of Appeals of West Virginia. He then sought a writ of certiorari from the Supreme Court of the United States, and this was denied, Morris v. West Virginia, 384 U.S. 1022, 86 S.Ct. 1944, 16 L.Ed.2d 1025 (1966), rehearing denied 385 U.S. 891, 87 S.Ct. 19, 17 L.Ed.2d 124 (1966). Identical writs of habeas corpus were then filed in the Circuit Court of Kanawha County, West Virginia, and the Supreme Court of Appeals of West Virginia. The West Virginia Supreme Court denied the petition, and the application to the Circuit Court of Kanawha County was withdrawn.

state, which had not theretofore put the warrant in evidence at the trial, determined to rest on the admissibility of the evidence seized as having been seized incident to a lawful arrest. At his trial, petitioner also attacked the voluntariness of the statements and admissions which he made, both at the time of the arrest at the parking lot and at the police station. The jury was excused and testimony was taken for the better part of two days on the issue of the voluntariness of the confessions, at the conclusion of which the trial judge made findings of fact and determined that the admissions, statements and confession were made voluntarily and admissible into evidence.

Additional facts will be stated in connection with the issues on appeal to which they relate.

## I

We consider, first, the legality of the search and seizure of physical evidence used to convict petitioner.

■ At the outset, we refer to certain basic propositions which shape the decision in regard to this contention. A search conducted in reliance on a void warrant may, nevertheless, be valid if, even without a warrant, the search was incident to a lawful arrest. United States v. Gearhart, 326 F.2d 412 (4 Cir. 1964), and cases cited therein. See also, Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927); United States v. Burkhart, 347 F.2d 772 (6 Cir. 1965); Commonwealth ex rel. Ensor. v. Cummings, 416 Pa. 510, 207 A.2d 230 (1965). Entirely permissible, therefore, was it for the state in the initial trial to rely on the validity of the search and subsequent seizure as an incident to a lawful arrest and to avoid questions concerning the validity of the warrant.

■ The law of West Virginia which is to be applied (United States v. Gearhart, supra) validates an arrest, without a warrant, if the arresting officer has probable cause to believe that a felony had been committed. City of McMechen ex rel. Willey v. Fidelity & Cas. Co. of N. Y., 145 W.Va. 660, 116 S.E.2d 388 (1960); State v. McCauley, 130 W. Va. 401, 43 S.E.2d 454; State ex rel. for Use of Brown v. Spangler, 120 W.Va. 72, 197 S.E. 360 (1938). And West Virginia, having a constitutional guarantee against "unreasonable searches," phrased like the Fourth Amendment, follows the federal rule, which permits reasonable searches as an incident to a valid arrest. State v. Taft, 144 W.Va. 704, 110 S.E.2d 727 (1959); State v. Bruner, 143 W.Va. 755, 105 S.E.2d 140 (1958); State v. Andrews, 91 W.Va. 720, 114 S.E. 257 (1922). See also, Harman v. United States, 210 F.2d 58 (4 Cir. 1954).

■ When these basic rules are applied to the facts which this record establishes, it is clear that the arresting officers had probable cause to believe that petitioner had committed a felony. Not only had one of the arresting officers investigated petitioner's actions for a period of a month and a half, he had observed petitioner committing a felony the day before the arrest and, by prearrangement with store officials, who aided in the investigation of the cause for disappearance of the merchandise, he was advised immediately prior to the actual arrest that petitioner was committing another felony. Petitioner's arrest occurred at a time that he was caught with the fruits of the latest crime.

■ We think also that the search, which was conducted in two stages, and the subsequent seizure were not unreasonable. The scene of the arrest was at petitioner's station wagon, which was parked in the store parking lot. United States v. Comi, 336 F.2d 856 (4 Cir. 1964). A preliminary search of that station wagon, by petitioner's acceding to a request to produce the keys and to unlock the vehicle, was clearly incident to a lawful arrest, and testimony of what was seen was admissible. However, even though the search began at that time and some items of Kroger merchandise were discovered in the vehicle, petitioner contends that since their seizure did not occur until a short time thereafter, when the vehicle had been driven by petitioner to the police station and the more inten-

sive second stage of the search had been completed the seizure was illegal under the holding in Preston v. United States, 376 U.S. 364, 84 S.Ct. 886, 11 L.Ed.2d 777 (1964), and the physical evidence and testimony concerning it inadmissible in the prosecution. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). As we have previously stated, the vehicle was driven to the police station by petitioner at the request of the arresting officers because petitioner's arrest and the partial search of his vehicle attracted a crowd, and the request was made to avoid undue embarrassment to petitioner and for the convenience of the police. The lapse of time between the arrest and seizure of the incriminating evidence was only that required to drive the station wagon several miles to the police station and that to complete the search.

We find nothing in the *Preston* case to require the conclusion that the second search and initial seizure were in violation of petitioner's Fourth Amendment rights. In *Preston* the defendants were arrested for vagrancy while sitting in a parked automobile. The car, which was not searched at the time of the arrest, was taken by the police to a garage at about the same time that the defendants were taken to police headquarters. At a later time the police searched the car and discovered various disguises and other paraphernalia used in a prosecution for conspiracy to commit bank robbery. The search was held to have been unreasonable and the admission of the evidence obtained thereby a violation of the defendant's Fourth Amendment rights.

Clearly, in *Preston,* the search was not incident to a valid arrest and, hence, was not reasonable. Just as clearly in the case at bar, the search was. Because of the movable nature of a motor vehicle and the fact that petitioner drove it to the police station where the search of it was completed in his presence, the case is no different than if a search of petitioner's

person were deferred until he was taken to police headquarters, where a search subsequently disclosed incriminating evidence. Cf. Robinson v. United States, 109 U.S.App.D.C. 22, 283 F.2d 508 (1960); Charles v. United States, 278 F.2d 386 (9 Cir. 1960); Tiffany, McIntyre, and Rotenberg, Detection of Crime: Stopping and Questioning, Search and Seizure, Encouragement and Entrapment (1967 Ed.), pp. 124, et seq.; 58 Journal of Criminal Law, Criminology and Political Science, pp. 18, et seq. (1967).

Petitioner anticipates our reliance on Cooper v. State of California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730, rehearing denied 386 U.S. 988, 87 S.Ct. 1283, 18 L.Ed.2d 243 (1967), by arguing that it is distinguishable. In the *Cooper* case, a sharply divided Court, held valid a search of a motor vehicle which had been impounded at the time of the defendant's arrest and searched at a later time out of his presence. Petitioner argues that his car was not in police custody when it was searched, because, unlike *Cooper,* the police had no authority to impound it.[3]

■ We do rely on *Cooper,* as well as *Preston* and innumerable earlier authorities, for the general proposition that whether a search and seizure are unreasonable within the meaning of the Fourth Amendment depends on the facts and circumstances of a particular case. We do not think that the holding of *Cooper,* on its particular facts, is applicable here. Similarly, *Preston's* holding, on its facts, is not applicable; but there are, in *Preston,* expressions to support our conclusion that the search in the instant case was reasonable. *Preston* states that "[C]ommon sense dictates * * * that questions involving searches of motorcars or other things readily moved cannot be treated as identical to questions arising out of searches of fixed structures like houses." 375 U.S. at 366, 84 S.Ct. at 883 [4] *Preston* also states that the right

---

3. The dissenting justices speculated that *Cooper* either overruled *Preston,* or that the Fourth Amendment, as made applicable to the states by the Fourteenth

Amendment, was "watered down" in the process.

4. *Cooper* expresses the same distinction. 385 U.S. at 59, 87 S.Ct. 788.

to search and seize, incident to valid arrest, " \* \* \* extends to things under the accused's immediate control \* \* \* and, to an extent depending on the circumstances of the case, to the place where he is arrested." Id., p. 367, 84 S.Ct. at 883, *Preston* describes the rationale of permissible contemporaneous searches as " \* \* \* the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime— things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control" (Id., p. 367, 84 S.Ct. at 883), and then adds, " \* \* \* these justifications are absent where a search is remote in time or place from the arrest." Id., p. 367, 84 S.Ct. at 883.

While petitioner was arrested at the parking lot and a search of his vehicle begun, the completion of the search of the station wagon and seizure of its illicit contents were not remote, either in time or place, from where the arrest occurred. The record supplies good reason why the search was not completed and the seizure made, precisely at the time of the arrest. In the interim between the arrest and the seizure the station wagon was under petitioner's control, both because of the movable nature of the vehicle and the fact that petitioner drove it to the station. We conclude that the search, in both stages, and the seizure were reasonable; and we see in *Preston* a clear indication that our conclusion that the search and seizure in this case and the subsequent evidentiary use of the merchandise seized were constitutionally permissible is correct.

## II

The voluntariness of petitioner's admissions and later oral and written statements was vigorously litigated, out of the presence of the jury, at his trial. The trial judge, on conflicting evidence,

made specific findings of fact, correctly applying applicable rules of law, that they were made voluntarily and admitted them into evidence for the consideration of the jury.[5] At the conclusion of the evidence, the trial judge read to the jury such of the requests for instructions by the parties as he allowed. Neither defendant nor the state requested any instruction submitting to the jury the issue of voluntariness of petitioner's admission and written statement, although the jury was instructed generally that credibility of witnesses and the weight to be afforded any particular item of evidence were matters within the jury's province to decide.

The manner in which petitioner's trial was conducted in regard to the admissibility of his admissions and statements and their consideration by the jury was strictly in accordance with West Virginia law. State v. Hamric, 151 W.Va. ——, 151 S.E.2d 252 (1966); State v. Vance, 146 W.Va. 925, 124 S.E.2d 252 (1962); State v. Brady, 104 W.Va. 523, 140 S.E. 546 (1927). Petitioner urges that such a procedure is repugnant to Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

The *Jackson* case condemned, for the failure to provide a reliable determination of voluntariness, the New York procedure under which a trial judge, presented with an issue of the voluntariness of a confession, would hold a hearing and make a determination out of the presence of the jury, as to whether, under the evidence concerning how the confession was obtained, the jury *could* determine it to have been given voluntarily and then to submit the issue of voluntariness to the jury. Under the New York procedure, the trial judge made no affirmative determination of voluntariness; he made a determination only of permissible jury determination of that issue. The opinion recognized two other procedures for dealing with the problem—the so-called "Massachusetts rule," under which the judge makes a determination of voluntariness

---

5. Petitioner testified at the in-chambers hearing on voluntariness. He also testified before the jury, denying certain admissions and statements and explaining that he signed the written statement from lack of understanding of its contents.

out of the presence of the jury, and if he finds a confession to have been given voluntarily, to submit the issue of voluntariness to the jury for a second determination, with the right on the part of the jury to find adversely to the judge's determination; and the so-called "orthodox" or "Wigmore" rule, under which the judge makes a determination of voluntariness out of the presence of the jury, and if he determines the confession to have been given voluntarily, not to submit the issue of voluntariness to the jury, but to instruct the jury to consider voluntariness as affecting the weight or credibility of the confession. In this case the orthodox rule was followed, in accordance with established West Virginia practice, and petitioner urges us to hold that its use was outlawed by the *Jackson* decision. In short, petitioner contends that the Massachusetts rule is the only constitutionally permissible procedure since the decision in *Jackson*.

A reading of the *Jackson* opinion discloses that it does not go. as far as petitioner urges us to go in this case.[6] In the recent decision of Sims v. State of Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed. 2d 593 (1967), the *Jackson* decision was summarized: "A constitutional rule was laid down in that case that a jury is not to hear of a confession unless and until the trial judge has determined that it was freely and voluntarily given. The rule allows the jury, if it so chooses, to give absolutely no weight to the confession in determining the guilt or innocence of the defendant, but it is not for the jury to make the primary determination of voluntariness." Id., pp. 543–544, 87 S.Ct. p. 643.

Four decisions in this Circuit bear consideration. In Stevenson v. Boles, 331 F.2d 939 (4 Cir. 1964), we held as error of constitutional magnitude the failure of a trial judge to submit to a jury, in a jury trial in a West Virginia court, the issue of voluntariness of a confession. We affirmed the judgment of the district court ordering the defendant's release conditioned upon an opportunity to the state to retry him. A close reading of our opinion, as well as that of the district court (221 F.Supp. 411 (N.D.W.Va. 1963)), fails to disclose whether the trial judge conducted a hearing on the issue of voluntariness of the confession and whether he made any determination of that issue. The decision was some months before the opinion in the *Jackson* case, and *certiorari* was granted by the Supreme Court. Our judgment was modified in Boles v. Stevenson, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109 (1964). In its opinion the Supreme Court commented that it was unable to ascertain on the record whether the trial judge declined to hold a hearing and declined to rule explicitly on voluntariness because he thought the confession was voluntary, or because he thought the objections to voluntariness were inadequate or untimely. The opinion continued: "Hence we do not know if the trial judge decided voluntariness, one way or the other, and, if he did, what standard was relied upon." Id., p. 45, 85 S.Ct. p. 176. The modification of our judgment was to grant Stevenson the type of relief previously ordered in *Jackson*, namely, a hearing in the state courts under appropriate procedures and standards designed to insure a full and adequate resolution of the issue of voluntariness or a new trial, failing

---

6. Two of the dissenting justices characterized the majority opinion as approving the orthodox rule:

"The Court * * * indicates that a State may still, under the new constitutional rule announced today, permit a trial jury to determine voluntariness if first the trial judge has 'fully and independently resolved the issue against the accused.' * * * In other words, the Constitution now requires the judge to make this finding, and the *jury's power*

to pass on voluntariness is a mere matter of grace, not something constitutionally required." (emphasis supplied) (Black and Clark, JJ., dissenting) 378 U.S. at p. 404, 84 S.Ct. at p. 1795. Accord: Clifton v. United States, 125 U.S.App.D.C. 257, 371 F.2d 354, 356 (1966) (dictum), cert. den. 386 U.S. 995, 87 S.Ct. 1312, 18 L.Ed.2d 341 (1967); Hackathorn v. Decker, 369 F.2d 150, 154 (5 Cir. 1966) (dictum).

which Stevenson would be entitled to his release.

In Moorer v. State of South Carolina, 368 F.2d 458 (4 Cir. 1966), we ordered the release of the accused unless he was afforded a new trial, where the trial judge excluded a confession on the ground of voluntariness, but where the jury had learned that an incriminating statement had been made. And, in United States v. Inman, 352 F.2d 954 (4 Cir. 1965), we prescribed in a federal prosecution, as a formula to be followed by district courts of this Circuit when confronted with an issue of the voluntariness of a confession, the Massachusetts rule. Specifically, we required that, after the taking of evidence on the question of voluntariness out of the presence of the jury and a determination by the district court that the confession was voluntary, " * * * the court should instruct the jury, whether requested or not, upon the law governing the use of a confession. * * * Included would be a forthright caution that before giving any weight to the confession, the jury must be satisfied beyond a reasonable doubt that it had been made by the accused uninfluenced by promise of reward, threat of injury or diminution of his rights." Id., p. 956. In Mullins v. United States, 382 F.2d 258 (4 Cir. 1967), we reversed a judgment of conviction in a federal prosecution on the authority of Inman, where the district judge failed to hold an independent hearing to determine the voluntariness of defendant's confessions and further failed to instruct the jury that it must find them voluntary before they could be relied on as evidence of guilt.

Petitioner seizes on certain language in our pre-Jackson decision in Stevenson, supra, our post-Jackson decision in Moorer, supra, and our decision in Inman, supra, to support his contention. Although not available to him when this case was submitted, petitioner would presumably also rely on what we said in Mullins, supra. Because our decision in Stevenson came before the opinion in Jackson, and because of the special context in which the statements in Moorer were made, we are not persuaded that they commit us to the view that constitutionally only the Massachusetts rule is permissible in a state prosecution under the decision in Jackson. What we said in Inman, which was a federal prosecution, did not prescribe a rule of constitutional application to prosecutions in state courts within this Circuit. Our decision in Inman is explainable on the ground of our supervisory power over district courts within the Circuit, and our faith in the salutary rule first announced in Denny v. United States, 151 F.2d 828 (4 Cir. 1945), cert. den. 327 U.S. 777, 66 S.Ct. 521, 90 L.Ed. 1005 (1946).[7] The same is true of our more recent expression in Mullins v. United States, supra, which was also a federal prosecution.

■ Reflection upon the Supreme Court's modification of our judgment in the Stevenson case convinces us that the holding of the Jackson case did not invalidate a confession where the voluntariness of a confession used to convict had been determined under the orthodox or Wigmore rule. Stevenson was convicted by a jury, and the jury had been many years discharged when the Supreme Court modified our judgment to permit the voluntariness of Stevenson's confession to be determined in a post-conviction hearing. Had the Constitution required that the jury, as well as the judge, pass upon the voluntariness of the confession

---

7. It is true that in Inman we said "The matter [submission of voluntariness of a confession to the jury] is so vital to due process it overrides the direction of Rule 30, F.R.Crim.P. that requests for instructions be presented at the close of the evidence or earlier." (emphasis supplied) Id., 352 F.2d p. 956. This was said in a federal prosecution against the background of our decision in Denny. There was before us no question of the minimum requirements that the due process clause exacted of state procedure. We were but emphasizing that in a federal prosecution we would notice the error under Rule 52(b), Fed.R.Crim.P., notwithstanding non-compliance with Rule 30.

the prescribed relief would have been manifestly inappropriate.[8]

We conclude that the admission of petitioner's admissions and statements into evidence in this case did not violate any of his constitutional rights.

### III

We turn to petitioner's contention that his constitutional rights were violated by the suppression of exculpatory evidence, a contention also advanced in his brief in the form of an alleged constitutional denial of the right of complete cross examination. The contention relates to the complaint for a search warrant, the search warrant for stolen goods which was issued, and the trial judge's refusing to permit petitioner, by cross examination of Officer Wandling and generally, to inquire into the circumstances of an alleged alteration of the complaint for search warrant and warrant, notwithstanding that the search of petitioner's station wagon was purportedly made under the authority of the warrant.

Both the complaint and the warrant itself, a single sheet printed document, contain spaces for an insertion in each of a description of the goods and chattels allegedly feloniously taken. The complaint, which is in the form of an affidavit, was executed and sworn to by Officer D. E. Wandling. The complaint contains a description of three items of merchandise listed in columnar form, and the warrant contains the same listing written, seriatim, in linear form along three lines, the items being "12 cans of Kroger brand Chili Sauce, 12 jars of Joe Fazio Spaghetti Sauce, undetermined amount of bars of Zest soap."

At a hearing out of the presence of the jury, plaintiff offered testimony by the accused that only the first listed item appeared in the complaint and warrant at the time the document was shown to him prior to the search of his station wagon, and testimony also of a handwriting expert that the listing of the second and third items in the complaint and in the warrant was not done as part of the same continuous process as the listing of the first item, in that the form had been removed from the typewriter and reinserted at a time or times and by a person or persons unknown to the expert. The expert did concede that all listings had been made on the same typewriter.

Petitioner seeks to invoke the decisions in Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in support of his contention that there was an unconstitutional suppression of exculpatory evidence, and Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), that he was unconstitutionally denied the right of complete cross examination.

---

**8.** In both *Jackson* and *Sims*, remand for a judge determination of voluntariness of a confession was also ordered, but in each, the jury which convicted the accused, had had submitted to it the voluntariness of the confession, and, by finding guilt, had presumably decided that issue. Only in *Stevenson* was it clear that the issue had never been submitted to the jury.

Significant, also, is the construction afforded Jackson v. Denno, supra, by courts of some of the states which were required, by its holding, to abandon the New York rule. Although two, New York and Oregon, adopted the Massachusetts rule, they treated *Jackson* as giving them a free choice between the Massachusetts and orthodox rules. People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965); State v. Brewton, 238 Or. 590, 395 P.2d 874 (1964). Three courts considered themselves at liberty to adopt the orthodox rule. People v. Walker, 374 Mich. 331, 132 N.W.2d 87 (1965); State v. Keiser, 274 Minn. 265, 143 N.W. 2d 75 (1966); State ex rel. Goodchild v. Burke, 27 Wis.2d 244, 133 N.W.2d 753 (1965), cert. den. 384 U.S. 1017, 86 S.Ct. 1941, 16 L.Ed.2d 1039 (1966).

Two United States Courts of Appeals have also interpreted Jackson v. Denno, supra, as permitting use of the orthodox rule. In State of Texas v. Graves, 380 F.2d 676 (5 Cir. 1967), its use in a state prosecution was upheld: "Jackson v. Denno does not require more. * * * [A] determination by the trial judge that the confession is voluntary normally would seem to be sufficient." Id., p. 681. In Coyote v. United States, 380 F.2d 305 (10 Cir. 1967), by dictum, Jackson v. Denno was considered to have approved resort to the orthodox rule.

To state the facts is in large part to show the lack of merit in petitioner's contention. The testimony of petitioner (who had been found on the issue of the voluntariness of his confession not to be a credible witness) to the fact that the complaint and warrant as produced at the trial listed items of merchandise not appearing thereon at the time the document was first exhibited to him, was directly controverted by Officer Wandling (found to be a credible witness on other matters where he controverted petitioner) at the same hearing out of the presence of the jury. The testimony of the expert gave no clue as to when or by whom the listing of the latter two items had been made, even if his testimony that all three items were not listed at the same time were accepted. No other evidence, including any evidence that Officer Wandling altered the warrant, or was a party to its alteration after it had been issued, appears in the record. For all that appears, even if the expert is believed, the second and third items might have been added prior to execution of the complaint, and at the time the form of search warrant was prepared, because a secretary or stenographer innocently omitted them when the document was first in her typewriter. Moreover, as we have shown, the seizure of evidence admitted against petitioner at his trial was fully sustainable without any reference to the warrant.

The claim that the facts concerning the "alteration" of the warrant would exculpate petitioner is premised on the inference that, if the expert's testimony is believed, there was an invidious explanation of what occurred, and the entire case against petitioner was fabricated. But this record fails to permit such an inference reasonably to be drawn. Brady v. State of Maryland, supra is inapplicable. Pointer v. State of Texas, supra, which was a case where confrontation was denied, is likewise not in point. Petitioner was fully confronted by Officer Wandling and his other accusers. There was no unreasonable limitation of cross examination. The exculpatory effect of the expert's testimony, if believed, through the impeachment of the credibility of Officer Wandling is so tenuous that we perceive no error of constitutional magnitude in the trial judge's refusal to allow petitioner to inquire into such matters and to introduce collateral and irrelevant issues into the trial. Cf., United States v. Smith, 264 F.2d 48 (4 Cir. 1965).

The judgment of the district court is Affirmed.