Eugene K. McALLISTER, Petitioner,

v.

Bruce BROWN, Warden, Ware Correctional Institution, Respondent.

Civ. A. No. C76–21A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 26, 1976.

Frank P. Samford, III, Atlanta, Ga., for petitioner.

Arthur K. Bolton, Atty. Gen. of Ga., and Kirby Atkinson, Asst. Atty. Gen. of Ga., Atlanta, Ga., for respondent.

## STATEMENT OF THE CASE

HOOPER, Senior District Judge.

While there are other alleged errors relied upon by the petitioner for habeas corpus in this case, the primary and controlling question is whether or not the Georgia trial judge and the Supreme Court of Georgia unconstitutionally applied the provisions of Georgia Code § 38–302 to the facts of this case:

Said Georgia Code Section reads as follows:

When in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence, not as hearsay, but as original evidence.

The policeman's conduct was not in issue (as in cases of illegal arrest) and consequently the statute did not apply to the facts in the instant case. This Court is holding that even if illegality of the arrest had been in question, the alleged confession related to the police officer by an unnamed informer (the name of which the police officer refused to divulge) deprived the petitioner herein of his constitutional right of confrontation and cross-examination accorded a defendant before receiving in evidence testimony concerning a confession.

Petitioner was convicted in the Superior Court of Fulton County of armed robbery and given a sentence of sixteen (16) years. His motion for a new trial was denied and that judgment was affirmed by the Georgia Supreme Court. See 231 Ga. 368, 202 S.E.2d 54. He filed a habeas corpus action in this court which was allowed in forma pauperis, but was dismissed for failure to exhaust state remedies. In December, 1974 he filed a habeas corpus action in Wayne County Superior Court, which was denied by that court and his pro se appeal to the Georgia Supreme Court was affirmed January 5, 1976. The present habeas corpus action was then filed in this court and allowed in forma pauperis, and counsel for petitioner was subsequently appointed by this Court. Allegations of error in the instant case allege insufficiency of the evidence on his trial and alleged improper summation to the jury by State's counsel, these allegations of error having been properly overruled by the Georgia Supreme Court.

Petitioner also alleged ineffective assistance of counsel on his trial, on which question it is not necessary for this Court for reasons hereinafter set forth, to make a ruling. The primary allegation of error is to the effect that petitioner was denied the right to confront witnesses against him, in that a confession allegedly made by an anonymous informant was admitted into evidence, and a discussion of that allegation is set forth below.

## FINDINGS OF FACT

1—Petitioner was convicted of armed robbery of a jewelry store in Atlanta, Georgia, on July 25, 1972. In that robbery the following assets were lost, none ever having been recovered, to-wit: $70,000.00 worth of diamonds, $5,000.00 worth of goods, and $1,000.00 worth of cash.

2—There were three victims at the scene of the robbery, to-wit: Rex Harrison (the watch maker), Otto Cohen (the owner) and Billy Cohen (the son of Otto Cohen).

3—The investigating police officer testified that the victims reported the crime to

him within minutes after its perpetration and that there was one robber concerned in the scene. Testimony on the trial by the victims, however, was to the effect that there were two robbers. Billy Cohen testified he could not identify the defendant on trial because the witness's back was to the robber. Rex Harrison testified that the defendant on trial held a knife to Billy's throat and that the other robber had a gun and struck him on the head with it.

4—Otto Cohen testified on the trial that the defendant had a big white-chromed plated gun and the man had neither a knife nor a pistol (note conflict with above testimony).

5—While there is testimony no gloves were worn by the robbers no finger prints were found.

6—Testimony of the police officer concerning the informer and the alleged confession follows in part the following: (See tr. beginning p. 180)

Q: Do you wish to disclose the informant's name?

A: No, sir.

Q: Why not?

A: Because he's known by the defendant and I'd rather not mention his name.

The foregoing questions related to prior testimony by the officer, as follows:

Q: Now, as a result of—well, first of all, what type of information did you have?

A: An informant called in and gave me some information, and I went and talked to him. He gave me the name of the person supposedly did the robbery.

Q: Did he tell you why he thought this person did the robbery?

A: He stated that the subject had told him about the robbery, that he did it.

It is significant that the State's prosecuting attorney was the first one to inject the question as to the police officer's unwillingness to give the name of the informant when he asked this question: "Do you wish to disclose the informant's name?", and received a negative answer. It is also significant that he asked the witness "why not" and received the answer "because he's known by the defendant and I'd rather not mention his name." The foregoing is significant when one considers the decisions of the courts as to whether or not the unknown informer was in anywise involved in the transaction under investigation. (See *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). (Further testimony by this police officer when cross-examined by defendant's counsel appears hereafter)

After the recent decisions by the Fifth Circuit Court of Appeals[1] this Court set this case down for a hearing requiring the presence of Officer Smith in order to determine the name of the informer referred to and whether the informant's name would be relevant in this case. Officer Smith testified he did not recall the informant's name, but stated he thought the name was included in some notes he had made concerning his investigation which he stated had been lost.[2]

7—Officer Smith, after several refusals to give the name of the informer (because the informer allegedly was acquainted with the defendant on trial) having failed to cooperate with this Court in obtaining or

1. This hearing was held before this Court in camera, at which time Officer Smith professed to have forgotten the name of such informer.

2. Testimony at this hearing has not been transcribed, but this summary is given from the Court's recollection of the same. At the first habeas corpus hearing Officer Smith did not allege that he did not recall the informant's name.

He testified at this subsequent hearing that he was interviewing informant in Fulton County Jail where the former was confined upon charges of a different robbery than the one involved in the instant case, at which interview the informer stated that he knew the person who was guilty of the robbery herein involved, that it was committed by a Negro male called "Crazy", who had admitted to the informer that "he did it". It was later discovered that "Crazy" was a nickname used by defendant McAllister who was subsequently indicted and convicted.

giving the name of such informer, this Court passed an order on June 29, 1976 in the further effort to obtain such name. Such order recited, "respondent contends, that the burden of proof is not upon respondent to furnish the name of said informant", with which contention this Court did not, and does not now, concur because "it now appears that such information is entirely within the possession, custody, and control of said respondent and is not being made available to the Court." It is unthinkable that no one connected with the prosecution of McAllister (without whose testimony his trial would have been an impossibility), did not recall or could not have readily ascertained his name. The testimony of Officer Smith that he was at that time interviewing the informer concerning another robbery would mean the informer's name and record would be quickly available in the office of the State District Attorney in Fulton County, or the Atlanta Police Department, in which department Officer Smith served.

Despite the statement in the Court's order of June, 1976 that "respondent is directed to inform this Court within fifteen days from and after this date of the name of such informant so that this Court may be able to pass on the issues in the case", and the statement by the Court that "failure of the Court to inform the petitioner (in habeas corpus) of the identity of the informer may have a substantial bearing upon the issues involved in this case"; the direction by this Court that the name of such informant be given to the Court availed nothing.

8—This Court finds that at no point in petitioner's trial, or prior to the trial, was any issue made as to the legality of petitioner's arrest or the events surrounding the arrest, or in anywise involving the conduct of the police officer in connection with the investigation or trial of the petitioner.

9—The contention either has been made, or will be made, by the respondent (or is involved by petitioner's allegations as to

lack of effective counsel), that petitioner's rights have been waived by failure of his counsel on his trial to object to the admission of evidence concerning a confession,[2] and perhaps also the failure of counsel to take further steps on the trial to obtain from Officer Smith the name of the informer. While this matter will be hereinafter discussed in connection with Conclusions of Law, Finding of Fact should also be made by this Court in connection therewith.

At the subsequent hearing of this habeas corpus petition defendant's trial counsel gave an explanation as to his failure on the trial to pursue the question of identity of said informer, and his failure to object to the confession.

As to the identity of the informant he stated:

I do recall that he did mention an informer or an informant. I also recall that there was testimony that there were two persons involved in this alleged robbery. There was some question in my mind as to about pursuing this thing for I know that from time to time the State does make deals with people and can come up with evidence that can be disastrous in a defense of his case. . . . There was a question in my mind as to who the informer might have been. Whether he might have been somebody that if we had pursued the fact could have been disastrous to us.

It is quite probable that the above thoughts have come into the witness's mind after the trial, for at the trial counsel did in his cross-examination of Officer Smith attempt rather vigorously to obtain the name of the informer, as shown by the following testimony.

In the transcript at page 184 the following occurred:

Q: Where is your informant?

A: I will not tell you.

Q: Why don't you have him in court?

A: Because he knows the defendant and I'd *rather not have him identified*.[4]

---

3. As held by the Georgia Supreme Court.

4. Officer Smith did not then state that he did not recall the informer's name.

Q: You don't want him to testify, do you?

A: No, sir, *I wouldn't have him testify.*

Q: He wouldn't testify, would he, Mr. Smith?

A: *I will not have him testify.*

Petitioner's trial counsel, it appears did everything that he could to obtain the name of the informer, short of calling upon the trial judge to require Officer Smith to give such person's name, and also short of objecting to the confession without giving the name of the informer to whom the confession was made.

It should be noted in passing that the petitioner nowhere joined in any alleged waiver of rights by his trial counsel, even assuming that there was a waiver, but on the other hand, insisted on his rights in his pro se application for habeas corpus and argued the same before the State habeas corpus judge who denied his petition primarily on the ground that the Georgia Supreme Court had upheld Georgia Code § 38–302. If, in fact plaintiff's counsel intentionally made a waiver of defendant's rights a different question might be here presented.

This Court finds as a fact that petitioner's trial counsel did not, as a matter of trial strategy, waive defendant's rights to obtain the name of said informer, or defendant's rights to object to the confession being admitted in evidence.

## CONCLUSIONS OF LAW

1—Practically all of the violations of plaintiff's constitutional rights in the instant case grow out of the unconstitutional application given by the trial judge and the Georgia Supreme Court to Georgia Code § 38–302 which reads as follows:

When, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence, not as hearsay, but as original evidence.

The statute in question was only declaratory of existing law which made admissible in evidence certain statements and declarations by individuals which furnished an explanation of actions and conduct of police officers in making investigations and conducting searches and seizures and in making arrests in connection with their official duties. A few cases illustrating the intended application of the statute according to Georgia courts are the following:

An early opinion written by Justice Bleckley of the Georgia Supreme Court on March 18, 1889, to-wit: *Kelly v. State of Georgia*, 82 Ga. 441, 9 S.E. 171, 172, made the following statement:

The court admitted in behalf of the State, a conversation of one witness with a third person, as mere inducement, to account for investigation by the witness. This evidence did no harm; but we think it would have been more regular to admit only the fact that a conversation occurred, without going into the particulars of what was said. The fact itself was all that was needed to show inducement, and certainly the conversation was not admissible for any other purpose.

In the instant case it cannot be said that the statement in question was not hearsay and particularly that it did no harm, since it was really double hearsay and involved an alleged confession of guilt not only related by an unknown informer, but one whose identity was, upon request, refused by the police officer in question.

On February 11, 1972 the Georgia Supreme Court decided the case of *McNeal v. State*, 228 Ga. 633 (h.n. 7), 187 S.E.2d 271. In that case error was assigned that the court erred in admitting testimony of a police officer over objection relating to his conversation with the prosecutrix outside of the presence of appellant. He was asked whether he recalled the prosecutrix making mention with regard to certain shoes, to which counsel for defendant objected on the ground that it was hearsay. The court permitted the officer to answer the question as to the conversation without going into the context of the same. The court stated:

The questions sought only to verify that there was a conversation, but not the content thereof. It did not involve hearsay, and it was not error to admit the testimony.

This Court takes judicial cognizance that it has been the uniform practice in the courts of Georgia over many years for a police officer to preface his testimony with language such as this:

[A]cting upon certain information which he had received

then stating what his actions were, but officers have never been permitted to state such a thing as this:

An informant called in and gave me some information, and I went and talked to him. He gave me the name of the person supposedly did the robbery . . . He stated that the subject had told him about the robbery, that he did it.

In the instant case the Supreme Court in reviewing petitioner's conviction on appeal, ruled as follows:

However, a review of the record discloses that the evidence referred to in the enumerated error was admissible as original evidence to explain conduct and comes within an exception to the hearsay rule (Code § 38–302; *Estes v. State*, 224 Ga. 687, 164 S.E.2d 108). *McAllister v. State*, 231 Ga. 368, 202 S.E.2d 54.

In the *Estes* case *supra* a police officer explaining why he went to a hospital to talk with the defendant

[R]eplied that he was asking the question to explain the conduct of the police officer in going to the hospital

not as proof of the facts stated, but merely to show that certain persons made statements to the officer

[A]nd he acted upon what the person told him.

As to the statement in question it was as follows:

[T]he officer answered to the effect that one person told him that the defendant said she had shot the deceased;

to this testimony defense counsel objected and

"[T]he solicitor general reiterated its purpose and the judge allowed it only for the purpose, so instructing the jury.[5]

The said purpose [6] was that State's counsel

[W]as asking the question to explain the conduct of the police officer in going to the hospital to talk to the defendant, not as proof of facts stated.

There is a vital distinction between the *Estes* case and the case at bar for in the *Estes* case the names of the persons to whom the alleged confession was made were given, whereas in the instant case the State's police officer witness positively refused in several instances to name the informer.

It will be pointed out below in what ways the concealment of the identity of such informer deprived this petitioner of his constitutional right of confrontation, and also his constitutional right of self-incrimination and violated the same by admission of a confession without the safeguards to be accorded a defendant as guaranteed by the Fourteenth Amendment to the United States Constitution.

## 2—THE RIGHT OF CONFRONTATION

Perhaps the leading case in this country concerning the right of a defendant to have a disclosure of an informer's identity is the case of *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). In an opinion delivered by Mr. Justice Burton the following statement concerning this matter was expressed by the Court:

**5.** In the instant case there was no statement by the prosecutor, nor any instructions by the court to the effect that evidence as to the alleged confession should be limited to an explanation of the officer's conduct, nor would such instructions by the court in the instant case have cured the errors herein complained of.

**6.** Other Georgia cases illustrating the purpose of Georgia Code § 38–302 are *Phillips v. State*, 206 Ga. 418, 57 S.E.2d 555; *Watkins v. State*, 231 Ga. 481, 202 S.E.2d 442 (1973) and *Pitts v. State*, 226 Ga. 878, 178 S.E.2d 177 (1970).

A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and if the Government withholds the information, dismiss the action. (353 U.S. pp. 60–61, 77 S.Ct. p. 628).

In the case of *Gilmore v. United States*, 256 F.2d 565, 566, 567 (5 Cir. 1958) the following portions of the *Roviaro* decision were reiterated:

> Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, *the possible significance of the informant's testimony* (emphasis added) and other relevant factors.

In the case of *McLawhorn v. North Carolina*, 484 F.2d 1, 5 (4 Cir. 1973) the court makes a distinction between persons labeled as "tipsters"[7] from those labeled "participants".

■■■ The identity of a tipster who merely has some hearsay information causing him to identify the guilty party from information which he passes on to the authorities is to be distinguished from cases involving informers, or informants, who are sufficiently related to the crime in question as to give sworn testimony concerning the same. As the tipster only conveys inadmissible hearsay evidence his identity is not important to the defendant, but the identity of an informer who professes to have heard a confession from the defendant is vital to a defendant on trial, and the right to confront and cross-examine such informant is a constitutional right vital to the defense.

In the case of *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) the court was confronted with the conflict between Mississippi rules of evidence and defendant's fundamental rights under the Due Process Clause of the Fourteenth Amendment. In the instant case the conflict is between said amendment and Georgia Code § 38–302 as applied by the Georgia courts. In the *Chambers* case the Supreme Court held that a denial of the right to call and cross-examine witnesses was a constitutional violation and the denial of a fair trial. The United States Supreme Court stated:

> "Few rights are more fundamental than that of an accused to present witnesses in his own defense. E. g., *Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972); *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948). In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. Although perhaps no rule of evidence has been more respected or more frequently applied in jury trials than that applicable to the exclusion of hearsay, exceptions tailored to allow the introduction of evidence which in fact is likely to be trustworthy have long existed. The testimony rejected by the trial court here bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest. That testimony also was critical to Chambers defense. In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.
>
> We conclude that the exclusion of the critical evidence, coupled with the State's refusal to permit Chambers to cross-ex-

---

**7.** A case involving a tipster is illustrated in the case of *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).

amine McDonald, denied him a trial in accord with traditional and fundamental standards of due process. In reaching this judgment, we establish no new principles of constitutional law. Nor does our holding signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures. Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial." (410 U.S., pp. 302 and 303, 93 S.Ct. p. 1049).

## 3—ADMISSIBILITY OF CONFESSION

■ Not only was defendant's right of confrontation of the informer denied in the instant case and evidence of defendant's alleged confession was admitted to the hearing of the jury, but the constitutional safeguards guaranteeing that only voluntary confessions shall be admitted on the trial were violated.[8]

In the case of *Sims v. Georgia*, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1966) the leading case of *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) was cited and approved. In the *Sims* case the following language was used:

A constitutional rule was laid down in that case that a jury is not to hear a confession unless and until the trial judge has determined that it was freely and voluntarily given.

The rule allows the jury, if it so chooses, to give absolutely no weight to the confession in determining the guilt or innocence of the defendant but it is not for the jury to make primary determination of voluntariness. Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary *must appear from the record with unmistakable* clarity. (emphasis added) Here there has been absolutely no ruling on that issue and it is

therefore impossible to know whether the judge thought the confession voluntary or if the jury considered it such in its determination of guilt. *Jackson*, having been decided June 22, 1964, was binding on the courts of Georgia in this case, it having been tried October 7, 1964. Such rule is, as we have said, a constitutional rule binding upon the states, and under the Supremacy Clause of Article 5 of the Constitution, it must be obeyed.

In applying the safeguards provided by the United States Constitution and in interpreting Georgia Code § 38–411, the court in *Bryant v. State*, 191 Ga. 686, 13 S.E.2d 820 (1941) (a case relied on by the court in the *Estes* case, supra) stated:

Before an alleged confession or incriminating statement can properly be admitted in evidence, there must be a prima facie showing made by the State or elicited by the court that it was freely and voluntarily made, without hope of reward or fear of punishment. If such preliminary proof fails to meet the requirements of the statute it is the duty of the court to exclude the confession from evidence.

In the case at bar, such prima facie showing having not been made by the State, nor having been elicited by the court, the incriminatory statement admitted into testimony should have been excluded, and such admission constitutes plain error.

In the case of *Tucker v. State of Georgia*, 91 Ga.App. 592, 86 S.E.2d 634 (1955) that court in granting a new trial stated:

Where upon the trial of one charged with the possession of non-tax-paid whiskey, it appears that the trial court over the timely and proper objection of counsel for the defendant that no proper foundation had been laid for the introduction into evidence of an alleged confession of the defendant, permitted a captain of police to testify concerning the defendant's confession without first requiring the State to establish "a prima facie case" that such

---

**8.** A constitutional provision is also contained in Georgia Code § 38–411 which provides:

To make a confession admissible it must have been made voluntarily without being

induced by another, by the slightest hope of benefit or remotest fear of injury.

confession was free from extraneous inducement by having the witness explain or state the circumstances attendant upon the defendant's confession, a new trial will be granted.

■ This Court finds that the error herein discussed is of such a clear and vital nature, that it cannot be disregarded solely because of lack of objection upon the part of defendant's counsel, in that it constitutes a clear denial of the Fifth and Fourteenth Amendments to the United States Constitution.

### 4—HARMFUL ERROR AND PREJUDICE

■ Perhaps no citation of authorities is necessary to support a contention that an improper admission in evidence of an alleged confession by the defendant on trial is harmful error requiring a reversal. The rule as to determination as to whether or not such admission in evidence of a confession requires a reversal the United States Supreme Court in *Kotteakos v. United States,* 328 U.S. 750, at pages 764 and 765, 66 S.Ct. 1239, at page 1248, 90 L.Ed. 1557 (1946) stated the following:

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. *Bruno v. United States,* supra, 308 U.S. [287] at page 294, 60 S.Ct. [198] at page 200 [84 L.Ed. 257]. But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart

from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

Also in the case of *Jackson v. Denno,* 378 U.S. 368 at p. 376, 84 S.Ct. 1774, at p. 1780 (1964), the Supreme Court made the following statement:

> It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, *Rogers v. Richmond,* 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760, and even though there is ample evidence aside from the confession to support the conviction. *Malinski v. New York,* 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029; *Stroble v. California,* 343 U.S. 181, 72 S.Ct. 599, 96 L.Ed. 872; *Payne v. Arkansas,* 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975. Equally clear is the defendant's constitutional right at some stage in the proceedings to object to the use of the confession[9] and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession.

The courts have repeatedly emphasized the significance of the admission of confessions in the trial of a case and its possible effect on the jury. In the case of *Payne v. Arkansas,* 356 U.S. 560, at pages 567 and 568, 78 S.Ct. 844, at page 850, 2 L.Ed.2d 975 the Supreme Court stated:

> Respondent suggests that, apart from the confession, there was adequate evidence before the jury to sustain the verdict. But where, as here, a coerced confession constitutes a part of the evidence before the jury and a general verdict is returned, no one can say what credit and weight the jury gave to the confession.

---

**9.** If respondent in this case seeks to avoid the impact of this ruling on the ground of the failure of defendant's counsel to object to admission of the alleged confession in this case as ruled by the Georgia Supreme Court in the instant case (231 Ga. 368, 202 S.E.2d 54) see the section of this Opinion under the subject of "Waiver" in the following portion of this Opinion.

And in these circumstances this Court has uniformly held that even though there may have been sufficient evidence, apart from the coerced confession, to support a judgment of conviction, the admission in evidence, over objection, of the coerced confession vitiates the judgment because it violates the Due Process Clause of the Fourteenth Amendment.

## 5—PLAIN ERROR

Rule 52(b) of the Federal Rules of Criminal Procedure states:

Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

■ In the case of *Sykes v. United States,* 373 F.2d 607 (5 Cir. 1967) the court ruled that the court of appeals under the plain error rule could review a basic constitutional question despite the fact that it had not been raised by the defendant if substantial rights are affected. See also *Alexander v. United States,* 390 F.2d 101 (1968). There are scores of other cases that are illustrative of the application of the plain error rule described above. One example is the case of *Mullins v. United States,* 382 F.2d 258 (4 Cir. 1957), in which the court stated on page 262:

The Government's attempt to distinguish the instant case from *Inman* on the basis of the fact that Mullins came voluntarily to the police station and freely made such statements ignores the clear teaching of this court in *Inman,* which requires both an independent hearing when a confession is proper and a specific instruction to the jury on the issue of voluntariness *even though there be no objection or request by defense counsel* (emphasis added).

The *Inman* case referred to above and found, *United States v. Inman,* 352 F.2d 954, 956 (4 Cir. 1965), stated the following:

To assure the accused complete protection, the procedure should substantially be this. On proffer of the confession, *even though there be no objection* (emphasis added), the court should let the jury withdraw, and then take the evidence upon the confession and its factual setting . . . ' The court will thereupon independently determine whether the confession is admissible.[10]

In the instant case the trial judge not only failed to make such preliminary investigation concerning the voluntariness of the confession but took no steps to ascertain the name of the informer and to obtain his presence when Officer Smith refused on several occasions to give the name of the informer.

■ While the plain error rule allows the appellate court to consider an issue not raised or objected to in the trial court the only apparent exception to that rule seems to be when counsel intentionally and as part of his trial strategy fails to raise such issue or make such objection. The case of *Adams v. Bensinger,* 507 F.2d 390 (7 Cir. 1974) states the test as follows:

The test to be applied is whether there was a deliberate tactical decision to forego this claim. *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

This Court has already found as a fact that the failure to object to the introduction of the alleged confession by the defendant to the anonymous informant and the failure of defendant's counsel (after repeated requests on cross-examination of B. J. Smith) to move the court to require disclosure of the informant's identity was not a result of counsel's trial strategy. (See Finding of Fact No. 8)

■ Therefore, not falling within this narrow exception to the plain error rule, failure to object at defendant's trial is held not to constitute a waiver of defendant's fundamental rights under the Fifth, Sixth and Fourteenth Amendments.

**10.** While *Jackson v. Denno* held that failure to conform to this procedure constitutes harmful error, this case goes a step farther and rules that the procedure is the duty of the court "even though there be no objection."

## ORDER OF COURT

WHEREFORE, this Court holds that Georgia Code § 38–302 was unconstitutionally applied both in the *Estes* case and to the facts of the case at bar, thereby depriving petitioner of a fair trial as outlined above.

A Judgment in this case will be entered granting the prayers of plaintiff's habeas corpus petition. His conviction is REVERSED and the case is REMANDED to the Superior Court of Fulton County, Georgia, which court is allowed a period of ninety days in which to re-try petitioner, or failing therein, to release him.