Charles E. SMITH, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16041.

United States Court of Appeals Ninth Circuit.

April 23, 1959.

Buell A. Nesbett, Anchorage, Alaska, for appellant.

William T. Plummer, U. S. Atty., George T. Boney, Asst. U. S. Atty., Anchorage, Alaska, for appellee.

Before FEE, CHAMBERS and JERTBERG, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

Charles E. Smith was indicted with James Burton Ing and Raymond Wright, together with several others, on twenty counts charging the uttering and publishing of forged checks in violation of § 65–6–1, A.C.L.A.1949. Smith was named with Ing and Wright in the first counts of the indictment. These three defendants stood trial. Ing was found

guilty on all counts of the indictment, Wright on all except five counts, and Smith on four of the five counts in which he was joined. It must be premised at the outset that there was overwhelming testimony in the evidence to sustain the verdict as to Smith exclusive of any alleged confessions or admissions.

Smith contends that the conviction was illegal because of various matters which happened prior to trial. It is claimed that these errors were perpetuated by rulings at the trial. The errors alleged stem generally from a confession which was taken in Seattle before the arraignment of Smith. The trial court ruled out this confession, but there is the claim that error was committed in refusing to permit Smith to inspect the confession before its attempted introduction into evidence. Further, error is predicated upon the fact that the trial court admitted certain oral statements made to another officer in Alaska after Smith had waived preliminary hearing, but before trial. The theory is that the supposed vice of the original confession was carried into the subsequent admissions because Smith was still in custody and since the admissions contained the same information as the confession.

The trial court failed to instruct the jury that the admissions of Smith while in custody must have been found by the jury to have been made voluntarily. Although this was specifically called to the attention of the trial judge and exception based thereon, no correction was made in the instructions. Finally, the United States Attorney made reference to the fact that defendants had failed to produce any witnesses in their own behalf.[1] There was a colloquy between the trial judge and the attorney, in which it was clearly indicated that the failure of defendants themselves to testify was the crux of the argument. The trial judge gave no instruction or admonition to the United States Attorney.

These matters will be taken up in the order above set out. First, it must be noted that the trial judge, after a hearing as to the voluntariness of the confession, ruled that it was inadmissible evidence. If this was error, it was favorable to defendant and he cannot complain. There were certain circumstances about the taking of the confession which strongly impel us to the belief that the trial judge was correct in the ruling. Only the salient circumstances will be recited. Smith was arrested in Seattle, Washington, on Friday, March 15, 1957, about three o'clock in the afternoon. He was not taken before a magistrate, but was questioned by the officers and an intruder, who was a special agent for the Board of Fire Underwriters. Smith refused to make any admissions, but finally signed papers which would permit his being returned to Alaska in custody. He was questioned by the officers again on Saturday, during which time he made no statements. On Sunday, he was again questioned by the officers for about two and one-half hours, when the jailor came into the room and said there was an attorney outside who wished to see Smith, but was advised by the private agent that the attorney could see Smith when the officers had finished their questioning. About fifteen minutes later, the jailor

---

[1] "Mr. Plummer: * * *

"Now, there's also much innuendo about the reliability about the Government's evidence. I say, and you know, it's the only evidence you have. If they didn't feel that it was reliable, why didn't they put on some evidence? Why didn't they put some evidence on? You have no choice; you have no evidence or no testimony other than that adduced by the Government witnesses, and by the Government—

"Mr. Kay: I hesitate to interrupt Mr. Plummer's argument, but I want to register an objection to that line of argument as tending to violate the constitutional right the defendant may have.

"The Court: Well,—

"Mr. Plummer: I didn't mention anybody, except, why didn't they put on a defense.

"The Court: That is correct. Objection overruled. If it had referred to an individual, then I would concur, Mr. Kay.

"Mr. Kay: They refer to three individuals at this counsel table, and no one else.

"The Court: Of course, that is true."

returned and stated to the officers that it was his opinion that Smith had a right to see the attorney who was waiting to talk to him. The private agent then said that the attorney could see Smith in a few minutes. On the second occasion, the jailor remarked that Smith had a right to see his attorney, and shortly after appeared at the door of the room with the attorney. By that time, a confession had been obtained from Smith, and he was simply waiting to have it reduced to writing so that he could sign it. The attorney who had been employed by the father of Smith asked Smith if there were anything Smith wished to see him about. None of the interrogators made any response, and Smith then stated that there was nothing for him to see the attorney about. There was a conflict of testimony as to whether there was a warrant, as to whether coercion and promises of lenient treatment were made. However, it is clear that Smith was never brought before the United States Commissioner until a typewritten copy of the original confession was signed by him.

As to the second point, without going into the law of the subject upon the right of a defendant to see a confession before trial under the Rule, there was no error here since the admission of the confession was refused.

Within a few days after the proceeding before the Commissioner, Smith was taken into Alaska, accompanied by the private agent above referred to. A witness of the Alaska Territorial Police testified that he had had a conversation with Smith while a detective and the private special agent who had brought Smith from Seattle were present. Counsel for Smith objected upon the ground that the testimony would relate admissions of defendant which he claimed were made under coercion and were not voluntary. The court cautioned the witness not to refer to the Seattle confession. However, no preliminary hearing was held to determine whether or not the testimony was prima facie admissible. This failure to hold a hearing is now assigned as error. The court permitted the officer to repeat the conversation in full in the presence of the jury. The witness then testified that he was to interview Smith with the special private agent about a matter which had nothing to do with the case on trial. He testified that, after the interview was concluded, Smith had then made a statement to the effect that he had been involved in a check cashing deal, that he wanted to plead guilty, serve his time, and did not want to be a stool pigeon. The witness then went on to repeat from memory much of the substance of the matters contained in the confession which had been obtained in Seattle. According to his testimony, all of the voluminous admissions made by Smith were volunteered spontaneously by Smith or casually after the discussion of the matter for which he was originally taken there to discuss had been completed. This interview took place on March 27, 1957, at the office of the Territorial Police in Anchorage, after Smith had been arraigned by a United States Commissioner at Anchorage on March 21, 1957. At that hearing, the Commissioner read the complaint to Smith and advised Smith of his rights. Thereupon, Smith waived preliminary hearing.

█ The poison tree theory pervades the whole argument on this feature. In Burwell v. Teets, 9 Cir., 245 F.2d 154, 162, this Court said:

"Of course, when an earlier confession has been coerced and a later one cannot be separated from the earlier one, and is but a continuation and still the product of the earlier coercion, the later confession may not be used whether the first is excluded or not."

But in that case the court found that a confession taken subsequent to an alleged coerced confession made the night before was not part of a continuous process. It should be noted, however, that the prior statements were found by the court to have been voluntary. In any event, the case at bar is not parallel to and has none of the incidents of connection shown in Leyra v. Denno, 347 U.S. 556, 561, 74 S.

Ct. 716, 98 L.Ed. 948. A review of the record, however, indicates that the facts which were improperly obtained did not taint this case, since proof of them had been gained from independent sources. Furthermore, the confession did not necessarily convict Smith. The independent testimony was sufficient. We therefore conclude that the evidence was adequate to permit the introduction of the admissions made in Anchorage. The trial judge, unquestionably, had concluded that the testimony of the officer was sufficient prima facie to establish the voluntary nature of the admissions. There was no error therefore in overruling the objection to the testimony and in the refusal to strike from the record, nor was there error in the denial of a preliminary hearing outside the presence of the jury upon the question of voluntariness and lack of coercion.

There are, however, two extremely serious questions which remain. An exception was taken to the failure of the trial court to instruct the jury that they must find that the admissions made at Anchorage were, in fact, voluntary. Error is also predicated upon the failure of the court to make plain to the jury, by

admonition to the United States Attorney or specific instruction to the jury, that a defendant is not required to produce evidence against himself or in his defense and that the failure of defendant to testify cannot be commented upon or referred to in argument.[2]

This Court is of opinion that these two failures of the court to instruct when the matter was called to its attention constitute, under the situation in this case, reversible error.

█ It is hornbook law that there are two stages to the admission of a confession or extra-judicial admissions of a defendant. The first is that the court must satisfy itself preliminarily that the confession or admission was not obtained by fear, force or the promise of favor or leniency. The court must be satisfied that the testimony of the surrounding circumstances is such as to indicate that the confession or admissions was made freely and voluntarily. This phase may be accomplished either with or without a preliminary hearing outside the presence of the jury. We have above ruled that in this instance the determination that the surrounding circumstances prima

---

2. While there was a general instruction buried among the rest that defendants had a right to elect not to take the witness stand and that the jury should draw no unfavorable inference against them on that account, this instruction was not sufficiently connected nor sufficiently forceful to overcome the reference by the prosecuting attorney to defendants and their failure to rebut the evidence against them. Wilson v. United States, 149 U.S. 60, 13 S.Ct. 765, 37 L.Ed. 650.

In Bruno v. United States, 308 U.S. 287, 292–293, 60 S.Ct. 198, 200, 84 L.Ed. 257, it was said: "The accused could 'at his own request but not otherwise, be a competent witness. And his failure to make such a request shall not create any presumption against him.' Such was the command of the law-makers. The only way Congress could provide that abstention from testifying should not tell against an accused was by an implied direction to judges to exercise their traditional duty in guiding the jury by indicating the considerations relevant to the latter's verdict on the facts."

In Langford v. United States, 9 Cir., 178 F.2d 48, the prosecuting attorney improperly drew the attention of the jury to the failure of defendant to take the stand not once but twice. At no time did counsel for the defense except to the comments of the prosecutor. On the second occasion, the court itself interposed and told the jury to disregard the comments of the government. Bruno v. United States, supra, was distinguished, in that no instruction was requested correctly stating the right of the accused not to take the stand. Since exception was not taken and it did not appear, in view of all the circumstances of the case, that defendant was sufficiently prejudiced to require the court to take notice of the remarks of the prosecutor as plain error, the verdict below was allowed to stand. The court stated in passing that: "Had defendant saved the point by proper objection, the instructions given would not have cured the error. But again, when given an opportunity to make their objections to the charge as given, before the jury retired, counsel for defendant stated none." At page 55.

facie prove the admissions voluntary was correct.

But there is a second phase to this determination. Defendant has a right to have the jury pass upon the question of whether the admissions made by him were coerced or were made freely. The jury should be instructed that, unless they find beyond a reasonable doubt that the confession was freely and voluntarily made, they should not give any consideration to the admissions in weighing guilt or innocence of defendant.[3] It is true that the failure to give such an instruction and submit this question to the jury would not be noted by us if the matter had not been called to the attention of the trial court and exception taken to the failure.

The situation in the case was such that these two failures were vital. The jury had before it admissions of defendant and had not been admonished that there was any question of fact for them to consider in that connection. The United States Attorney had called specific attention to the fact that defendant had introduced no evidence with the plain implication that defendant had never denied that he had made the admissions and had not offered any excuse or coercion while he was in custody. The presence of the private agent at the time these admissions were made, according to the testimony of the officers, gives some ground for the contention that they were involuntary. He was apparently a busybody and an interloper. Therefore, the jury should have had the matter called to its attention so that they might conclude whether the pressures from the presence of this person had any effect in coercing the admissions. The effect of this error was very much enhanced by the failure of the court to tell the jury, after the remarks of the United States Attorney had been made or in instructions relating to the specific incident, that failure of defendant to testify does not create any presumption against him or weigh in the slightest degree against him and that this fact should not enter into the discussions or deliberations of the jury in any manner.

Notwithstanding, we think that the record contains sufficient evidence to con-

---

3. "When there is a conflict of evidence as to whether a confession is or is not voluntary, if the court decides that it is admissible, the question may be left to the jury, with the direction that they should reject the confession if upon the whole evidence they are satisfied it was not the voluntary act of the defendant." Wilson v. United States, 162 U.S. 613, 624, 16 S.Ct. 895, 900, 40 L.Ed. 1090. See United States v. Mitchell, 322 U.S. 65, 69–70, 64 S.Ct. 896, 88 L.Ed. 1140; United States v. Anthony, D.C., 145 F. Supp. 323, 335–336; United States v. Guerrino, D.C., 126 F.Supp. 609. See also Sparf v. United States, 156 U.S. 51, 54, 15 S.Ct. 273, 39 L.Ed. 343.

In Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192, a taxpayer sought to suppress evidence, alleging that a statement had been obtained by government promises which were not fulfilled. While the trial court "refused to hold a hearing outside the presence of the jury to determine preliminarily the statement's admissibility," the judge submitted the issue to the jury with the instruction that "they were to reject the statement, and all evidence obtained through it, if 'trickery, fraud or deceit' were practiced on petitioner or his accountant." At page 151, of 348 U.S., at page 196 of 75 S.Ct. The Supreme Court went on to say: "The issue of fraud or deceit on the part of the Government agent was properly submitted to the jury, and the jury, in arriving at its general verdict, could have found from the conflicting evidence that no fraudulent inducement had been offered petitioner on his accountant." At page 151 of 348 U.S., at page 196 of 75 S.Ct. Cf. Lyons v. State of Oklahoma, 322 U.S. 596, 601, 64 S.Ct. 1208, 88 L.Ed. 1481. This Court in Runnels v. United States, 9 Cir., 138 F.2d 346, 347, determined that the "trial judge inquired into the circumstances of the confession and being of the opinion that they had not been obtained by coercion he admitted them in evidence, and the question of their voluntary character was later submitted to the jury under appropriate instructions." Even so, the lower court was reversed because defects in obtaining the confession were such that it should never have been admitted in evidence.

vict defendant irrespective of the confession or the admissions. Still, whether innocent or guilty, he was entitled to a fair and impartial trial.

Reversed.

JERTBERG, Circuit Judge (concurring).

While I agree with the majority opinion that the judgment of conviction must be reversed for the reasons stated in the opinion, I do not share the views expressed regarding the admission in evidence of the testimony of the member of the Alaskan Territorial Police, who was permitted to testify to much of the substance of the matters contained in the signed confession made by the appellant at Seattle, which confession the trial court excluded because taken in violation of the provisions of Rule 5(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. Prior to the admission of this testimony, appellant objected to its receipt in evidence and requested the district court to conduct a hearing out of the presence of the jury in order to determine preliminarily whether such officer's testimony was the fruit of the violation of the rights of appellant as set forth in Rule 5(a). The district court overruled the objection and denied the request. In my opinion, many of the facts set forth in the majority opinion tend to support my view that the district court should have acceded to appellant's request. It is conceivable that after such a hearing, at which the appellant would have probably testified, the trial court might have overruled appellant's objection and permitted such testimony to go before the jury, on the ground that such testimony was from an independent source and was not derivative of the violation of the provisions of Rule 5(a). The ruling of the court, however, placed the appellant in a position of jeopardy. In order to properly present this point to the jury the appellant would have been compelled to present testimony of the circumstances surrounding his arrest at Seattle and of the written confession made by him. Otherwise, the appellant would have been in no position to show that the admissions made at Anchorage were the fruits of the acts of the officers at Seattle, which the trial court found to be unlawful and in violation of Rule 5(a).

On retrial of this action I feel that the district court should carefully consider the holding of a hearing out of the presence of the jury should this testimony be again offered before determining its admissibility.