**Ernest STEVENSON, Appellee,**

v.

**Otto C. BOLES, Warden of the West Virginia State Penitentiary, Appellant.**

**No. 9202.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 21, 1964.

Decided April 28, 1964.

**940**

Claude A. Joyce, Asst. Atty. Gen. of West Virginia (C. Donald Robertson, Atty. Gen. of West Virginia, on brief), for appellant.

Ronald P. Sokol, Charlottesville, Va. [Court-assigned counsel] (Tom T. Baker, Huntington, W. Va., Court-assigned counsel, on brief), for appellee.

Before SOBELOFF, Chief Judge, and BRYAN and J. SPENCER BELL, Circuit Judges.

PER CURIAM.

This is an appeal by the State of West Virginia from an order of the District Court directing that the prisoner Ernest Stevenson be released or retried within a reasonable time. The District Court found that the prisoner's constitutional rights had been violated by the introduction at his original trial of a coerced oral confession. The District Court's opinion is published at 221 F.Supp. 411.

On February 5, 1960, at 11:00 a.m. the body of Louise Davis was found lying in a pool of blood in the back room of the Atlantic Seafood Shop in the city of Huntington, West Virginia. She had been brutally murdered at about 1:00 o'clock that morning. Her head was crushed and both jaws broken. She had a stab wound in the chest, and there were indications that she had been raped. The owner of the shop testified that $42.00 was missing from the cash register. Shortly after the crime was discovered the police learned that the prisoner and an unidentified man had been observed at the scene of the crime at about the time fixed for the death. They went to the prisoner's sister's home, where he was residing, and took him into custody. Instead of taking him directly to the police station they "detoured" by the scene of the crime. The state's brief succinctly sets forth what happened thereafter.

"The police arrived on the scene shortly after 11:00 a. m. Three members of the police force, namely, Joe Coleman, B. T. Tomlinson, and Don L. Salyers, took the petitioner into custody at his home on 28th Street, and conveyed him by automobile from his home down 8th Avenue to a point about fifty feet from the Atlantic Seafood Shop, at which time officer Tomlinson asked the petitioner if he committed the crime, and then indicated he was going to take him into the establishment. The petitioner said, don't do that, that he would tell the officers what they wanted to know when they arrived at the police station. Officer Tomlinson then said to the petitioner, 'I want to know now, did you commit this crime,' to which the petitioner replied, 'Yes, I did, please don't take me inside, take me to headquarters.' "Policeman Joe Coleman testified that the petitioner said, 'I don't want those people to look at me.' Policeman Don Salyers testified that the petitioner said, 'he didn't want to face all those people.' The petitioner, at the trial in the Common Pleas Court, gave substantially the

same version as to what happened near the Atlantic Seafood Shop as that given by the police officers. He denied, at the trial, that he admitted that he killed the woman.

"The post-conviction hearing was held in the District Court of the United States for the Northern District of West Virginia on August 28th, 1963, upon the petition for a writ of habeas corpus, at which time the petitioner testified that at the time the police officers conveyed him to the vicinity of the Atlantic Seafood Shop there was a large group of people in front of the fish market, all of whom were friends of his, and that he did not want to face all those people, or for them to see him under arrest. He further stated that it was a source of embarrassment to him.

"At the post-conviction hearing the petitioner testified that he might have admitted that he killed the deceased.

"The petitioner also testified that he was twenty-three years old at the time of the crime. He had a seventh grade education. He had spent three years in the Army. His prior criminal record was one arrest for a felony, which was reduced to a misdemeanor." [His offense was the unauthorized use of a car.]

■ The voluntariness of the confession—the ground of the District Judge's decision to grant the petitioner conditional release on habeas corpus—we do not reach. Hence we do not pass upon the right or wrong of the Court's findings and conclusions. The same end, however, is reached by our view: that in his trial the petitioner was deprived of Fourteenth Amendment due process by the criminal trial court's failure to instruct the jury explicitly that before they could accept the oral confession, they must believe beyond a reasonable doubt that it was given on his own volition.

■ Without his disclosure, it is possible that guilt could not have been found. Though perhaps too tardily interposed to require a preliminary hearing on the issue, cf. United States ex rel. Jackson v. Denno, 309 F.2d 573 (2 Cir. 1962), cert. granted, 371 U.S. 967, 83 S.Ct. 553, 9 L.Ed.2d 538 (1963); Wilson v. Sigler, 285 F.2d 372, 377 (8 Cir. 1961); United States v. Aviles, 274 F.2d 179, 192 (2 Cir.) cert. denied, Evola v. U. S., 362 U.S. 974, 80 S.Ct. 1057, 4 L.Ed.2d 1009, 362 U.S. 982, 80 S.Ct. 1068, 4 L.Ed.2d 1015, rehearing denied, 363 U.S. 858, 80 S.Ct. 1610, 4 L.Ed.2d 1739 (1960); United States v. Bando, 244 F.2d 833, 845–846 (2 Cir.), cert. denied, 355 U.S. 844, 78 S.Ct. 67, 2 L.Ed.2d 53 (1957); but see Crosby v. United States, 114 U.S. App.D.C. 233, 314 F.2d 238 (D.C.Cir. 1962); State v. Brady, 104 W.Va. 523, 140 S.E. 546, 549 (1927), nevertheless objection to the statement was voiced at trial with respect to voluntariness. Thus, the defendant's freedom of will at the time became an issue in the case. True, defense counsel made no request for a specific instruction, but with the proof of guilt pivoted upon the acknowledgment of guilt and with the question of voluntariness plainly before the Court, it was indispensable to fairness of trial that the jury be specially counselled on the point.

■ Involuntariness, it is hornbook, drains a confession of every modicum of legal acceptability irrespective of its truth. Any conviction which it has tainted is instantly condemned by the due process clause. See, e. g., Blackburn v. Alabama, 361 U.S. 199, 210, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960); Brown v. Mississippi, 297 U.S. 278, 285–286, 56 S.Ct. 461, 80 L.Ed. 682 (1936). But it is not enough simply to concede this potential infirmity. Unconstitutionality to be fully and squarely honored must be communicated to those who are searching for the truth, thereby revealing any possible defilement. See New York Times Co. v. Sullivan, 84 S.Ct. 710 (1964). Therefore, it seems elementary that the authorities outlawing an induced confession must be read as requiring an exposition of this constitu-

tional exaction to the jury. Otherwise, the accused is accorded no more than an academic acknowledgment of this fundamental precept. Just that occurred here.

■ The Court was aware of this great safeguard to the accused, the prosecution was mindful of it, defense attorneys knew it, but the jury was never authoritatively instructed upon it. That it is our duty to insure that a "state-approved instruction fairly raises the question of whether or not the challenged confession was voluntary" in satisfaction of the due process clause was recognized in Lyons v. Oklahoma, 322 U.S. 596, 601, 64 S.Ct. 1208, 1212, 88 L.Ed. 1481 (1944).

The instant instructions did not satisfy this right of the defendant. They embraced, generally, the doctrines of reasonable doubt; the jury as the sole judge of a witness' credibility; their right to disregard any part of the evidence thought untrustworthy and the accused's entitlement to a fair consideration of his own testimony. Under this submission, the jury could well have believed the officers' narration of the accused's owning up to the crime to be accurate and precise, and yet not evaluate the incrimination with regard to the willingness or coerciveness with which it came. Again, the jury could have disbelieved the defendant's denial that he made the utterance, and yet not understood that the *fact* of the confession is not enough —that it must also have been forthcoming of his own choosing.

While the absence of a *voir dire* examination on the defendant's volition in respect to such a statement has been excused as not a deprivation of rights, this relaxation apparently is premised on the granting of an instruction to the effect that an absolutely essential prerequisite, to the jury's consideration of a confession, is that the jurors first find it altogether free of constraint upon the confessor. Stein v. New York, 346 U.S. 156, 170, 173, 192, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953). Although not Fourteenth Amendment cases, Crosby v. United States, supra, and Smith v. United States, 268 F.2d 416 (9 Cir. 1959), reiterate the indispensability of such an instruction. In the latter decision this was said, 268 F.2d at p. 421:

"But there is a second [that is, after the preliminary inquiry] phase to this determination. Defendant has a right to have the jury pass upon the question of whether the admissions made by him were coerced or were made freely. The *jury should be instructed* that, unless they find beyond a reasonable doubt that the confession was freely and voluntarily made, they should not give any consideration to the admissions in weighing guilt or innocence of defendant. It is true that the failure to give such an instruction and submit this question to the jury would not be noted by us if the matter had not been called to the attention of the trial court and exception taken to the failure.

"The situation in the case was such that these two failures were vital. *The jury had before it admissions of defendant and had not been admonished that there was any question* of fact for them to consider in that connection. * * *" (Accent ours.)

In the case before us, to repeat, no prayer for such an instruction was offered, but the question of voluntariness had been raised with sufficient point to require an express admonition to the jury by the Court *sua motu*. Moreover: "The duty of maintaining constitutional rights of a person on trial for his life rises above mere rules of procedure." Brown v. Mississippi, supra, 297 U.S. at 287, 56 S.Ct. at 465.

The order is affirmed and the matter remanded to the District Court for final disposition.

Affirmed.