**UNITED STATES of America,
Appellee,**

v.

**Raymond ANDERSON, Defendant-
Appellant.**

**No. 314, Docket 31751.**

United States Court of Appeals
Second Circuit.

Argued Feb. 6, 1968.

Decided May 8, 1968.

Samuel Segal, New York City (Theodore Krieger, New York City, of counsel), for defendant-appellant.

Robert M. Morgenthau, U. S. Atty. for Southern District of New York (James W. Brannigan, Jr. and Elkan Abramowitz, Asst. U. S. Attys.), for appellee.

Before WATERMAN and FEINBERG, Circuit Judges, and BARTELS, District Judge.*

BARTELS, District Judge:

This is an appeal from a judgment of the United States District Court for the Southern District of New York convicting the appellant, Raymond Anderson, after a jury trial, on two counts of violating 21 U.S.C. §§ 173 and 174.

Count 1 of the indictment charged Anderson with selling, on February 10, 1966, 32 grams of illegally imported heroin, and Count 2 with illegally concealing and facilitating, on December 5, 1966, the transportation of 1.5 grams of heroin.

The Government's evidence established the following: On February 10, 1966, about 10:30 P. M., Narcotics Agent Herman A. Scott and an informant from the Bureau of Narcotics under the surveillance of Agent Leo Thomas met Anderson at the Cafe Lounge, 1753 Amsterdam Avenue, New York, N. Y., and later the same evening, pursuant to Anderson's directions, met him again at Allan's Restaurant, 138th Street and 8th Avenue, New York, N. Y., where Agent Scott purchased from Anderson seven bundles of glassine packets of heroin for $600.

In the early evening of December 5, 1966, Narcotics Agents Thomas and Charles T. Collins, armed with a warrant, arrested Anderson while seated in a car near 141st Street and 7th Avenue, New York, N. Y. Incident to the arrest, they made a search of the car which uncovered fifteen glassine envelopes of heroin secreted under the front floor mat. Thereafter they placed Anderson in a Government vehicle and proceeded to the office of the Bureau of Narcotics at 90 Church Street, New York, on the way to which Anderson expressed a desire to cooperate. After arrival at 90 Church Street Anderson, upon questioning by Agent Thomas, made certain admissions identifying his chief supplier of heroin and also naming six or seven other narcotics violators in the Harlem area.

Before the trial Anderson moved to suppress the receipt in evidence of these admissions upon the ground that he had not been first advised in full of his constitutional rights. A *voir dire* hearing was held before Judge Bonsal outside of the presence of the jury, at which Agent Thomas related the warnings given to Anderson as follows:

"Q. Agent Thomas, would you tell us what conversation you had with the defendant Raymond Anderson in the fingerprint room at approximately 8 p. m. on the evening of December 5, 1966? A. Well, I told him again that I was a Federal narcotic agent and that he had been arrested for violation of the Federal narcotic laws and specifically the sale of narcotics to an undercover agent.

I then told him that he had a right to a lawyer at this time, and if he had one I would be glad to call the lawyer for him, that if he didn't have one that the Court would appoint him one.

I further stated that he had a right to remain perfectly silent and that anything he did say could be used against him at a later date in a court proceeding.

He said that he didn't want to speak to a lawyer and that he understood.

I then asked him, first, if he wanted anything to eat. He told me that he had a heart condition and that he had ulcers and that he had a very limited diet, and he named four or five foods. I asked him what he wanted. He said he wanted two vanilla malteds, which I asked Agent Collins to get for him. Agent Collins then left."

---

* Of the Eastern District of New York, sitting by designation.

Agent Collins, in whose presence the warnings were given partially but not fully, corroborated Thomas' testimony as follows:

"Q. Would you tell the Court what transpired during that conversation? A. Yes. Agent Thomas told Raymond Anderson that he had a right to an attorney present at that time, and that anything he said could be used against him in court, and that he had a right to remain silent, and Agent Thomas said that he would call an attorney for him if he had one."

In his testimony Agent Collins did not state that Agent Thomas had also told Anderson that if the latter could not afford an attorney the court would appoint one for him or that Anderson had said he "understood" the warning. Anderson took the stand and denied that he was ever told that he had a right to silence or to the appointment of counsel or that anything he said could be used against him, and further denied identifying any supplier of narcotics or naming any other narcotics violators. At the conclusion of the hearing Judge Bonsal found that Agent Thomas had warned Anderson and that these warnings complied with the standards set forth in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and accordingly denied the motion to suppress.

At the trial Agent Thomas again testified as to the warnings given to Anderson and the statements made by Anderson at the Narcotics Bureau naming certain suppliers and narcotics violators. No effort was made by cross-examination or additional evidence from Anderson or anyone else to suggest that Anderson's statements were extracted without his consent or by coercion. Instead Anderson took the stand and denied ever making the statements, remaining silent upon the question of warnings.

At the conclusion of the trial Judge Bonsal charged the jury as follows:

"You will recall that all these statements were made after these transactions. So you will consider those state-ments in considering the credibility which you give to the testimony of Agent Thomas. You will consider them with respect to the credibility you give to the testimony of the defendant. But please do not consider this testimony in determining the guilt or innocence of the defendant. Consider it on the question of credibility as between the agent and the defendant."

There are two prongs to Anderson's attack upon his judgment of conviction.

I

██ Anderson first claims that the Government at the *voir dire* hearing failed to meet the "heavy burden" required by *Miranda* because of a variance in the testimony of Agent Thomas and Agent Collins concerning the substance of the warnings. If Agent Thomas is to be believed, it is clear that his warning fully complied with the *Miranda* standards. Anderson, however, contends that the testimony of Thomas is unreliable because his statements were not fully verified by statements made by Agent Collins. Unreliability and incompleteness are not synonymous. Agent Collins was never afforded the opportunity to testify whether Agent Thomas had actually informed Anderson of his right to appointed counsel if indigent, or that Anderson had stated that he "understood." He was never called upon to affirm or deny these specifics. The worst that can be said about Collins' testimony is that it did not include all that Thomas reported. Anderson, on the other hand, denied receiving any warnings at all. It is axiomatic that the voluntary nature of a waiver depends on the facts and circumstances of each case. United States v. Drummond, 354 F.2d 132 (2 Cir. 1965). The *Miranda* court in quoting from Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962), indicated that a waiver could be established by " * * * an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer."

Judge Bonsal, after gauging and appraising the credibility of the witnesses, concluded that such evidence was present here and that the proper *Miranda* warnings had been given. Upon this record we find no reason to disturb Judge Bonsal's ruling.

 Anderson vaguely refers to another objection to the voluntary nature of his statements based upon his alleged physical condition at the time they were made. He claims he was given a "pill" and from this we are to infer that he was not in the proper physical condition to make a voluntary statement. No evidence was offered to support this contention. The only pertinent testimony is Anderson's testimony that Agent Collins at Anderson's request obtained pills for Anderson which he said he was taking for his ulcer. We find no substance to this claim.

## II

 Anderson also attacks Judge Bonsal's charge to the jury upon the ground that the court should have charged that the alleged admissions should be disregarded in their entirety if the evidence did not convince the jury beyond a reasonable doubt that the admissions were voluntarily made. In support of this claim he cites Stevenson v. Boles, 331 F.2d 939 (4 Cir. 1964), modified and affirmed, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109 and United States v. Inman, 352 F.2d 954 (4 Cir. 1965), holding that a trial judge must instruct the jury, even in the absence of a request, that no confession may be considered unless the jury is convinced, beyond a reasonable doubt, of its voluntary nature. His reliance upon these authorities is misplaced.

 In *Stevenson* the defendant denied both voluntariness and the admission, and in *Inman* the defendant denied only the issue of voluntariness. In this case Agent Thomas was not called upon at the trial until rebuttal to testify to the admissions made by Anderson at the Narcotics Bureau. He again testified as to the cautionary warnings given Anderson but was not cross-examined upon this point. Thereupon Anderson took the stand in surrebuttal and denied making the admissions to Agent Thomas but gave no testimony concerning the presence or absence of any warnings. The issue of voluntariness was not questioned. Accordingly, we are not faced with the same problem presented in *Stevenson* and *Inman*.

 The trial court held a hearing in the absence of the jury, screened the statements and made the critical determination that the admissions were voluntarily made. Defendant contends that the judge should have taken the second step by following the Massachusetts procedure of submitting the voluntariness issue to the jury. We find no constitutional requirement in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), for a further submission to the jury. We need not reach here the question of whether upon a request the issue should also be submitted to the jury.[1] Where the admission has been denied and no request made, we believe that a requirement that the court must nevertheless submit the voluntariness issue to the jury raises a further question of interference with the trial tactics of the defendant. Whatever may be the rationalization for the ultimate submission of the coercion issue to the jury under the Massachusetts procedure, a compulsory requirement without a request in every case may deprive the defendant of the very protection he seeks. Conceivably he may prefer to have the jury address itself only to his claim that no statement was made rather than deliberate upon the two issues of voluntariness and denial, upon the theory that consideration of both issues might dilute the

---

1. The general question of a second submission to the jury of the issue of voluntariness was considered in three recent cases before this Court but no decision was made upon this specific issue. See, United States v. Fayette, 388 F.2d 728 (2 Cir. 1968); United States v. Feinberg, 383 F.2d 60 (2 Cir. 1967); United States v. Ferrara, 377 F.2d 16 (2 Cir. 1967), cert. denied, 389 U.S. 908.

748

force of the one issue of denial.[2] At all events, the defendant and not the court should decide what strategy should be pursued to adequately protect the defendant's interest. To take this choice out of his hands would deprive him of the right to conduct his defense in his manner and in accordance with his own standards. See, Bruno v. United States, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257 (1939); United States v. Reiburn, 127 F.2d 525 (2 Cir. 1942). Anderson's failure to request a specific instruction or to object to the charge was a decision on his part to risk his defense upon the denial of the admission rather than upon the issue of coercion. Any alternative rights he might have had were thus waived. United States v. Fayette, 388 F.2d 728, 735 (2 Cir. 1968).

In its charge the trial court limited consideration of the admission to the question of credibility. When there is no necessity for a second submission to the jury, it would seem to follow as a corollary that once the court has found that the admission was voluntary there is no basis for limiting its use to the collateral issue of credibility. Accordingly, we conclude that there was no obligation on the part of the trial judge to submit the issue of voluntariness to the jury and further that his instruction was more favorable to the defendant than necessary.

Affirmed.

WATERMAN, Circuit Judge (concurring):

I believe that the pre-interrogation warnings given to defendant in this case were not as thorough as those mandated by the United States Supreme Court in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). See my concurring opinion in United States v. Vanterpool, 394 F.2d 697 (2 Cir., Apr. 29, 1968). In the present case, the government narcotic agents, like the

Assistant United States Attorney in *Vanterpool*, neglected to inform the defendant, an accused person in custody, that if he then had no counsel, or could not afford one, counsel would be appointed by the court for him prior to any questioning and that the appointed counsel could be with him at the time of the questioning. Nevertheless, the majority of the division of the court sitting in *Vanterpool* found that *Miranda* had there been complied with. Because the inadequacy I find in the warnings administered to appellant here is the same inadequacy I found in the warnings administered to Vanterpool, and because, despite my understanding of the *Miranda* requirements, the *Vanterpool* majority's interpretation is, for the nonce, the law in this circuit, I reluctantly consider myself bound and concur in the affirmance of appellant's conviction.

I have no reservations about the content of Part II of Judge Bartels's opinion.

2. Upon summation neither counsel for the prosecution nor counsel for Anderson made any mention of the issue of voluntariness but emphasized only the issue of credibility.