See also, D.C., 262 F.Supp. 716.

**UNITED STATES of America**

**v.**

**Charles JACKSON.**

**Crim. No. 11829.**

United States District Court
D. Connecticut.

June 19, 1968.

Jon O. Newman, U. S. Atty., and Paul S. Sherbacow, Asst. U. S. Atty., Hartford, Conn., for the United States.

Steven I. Traub, of Lynch & Traub, New Haven, Conn., for defendant, Jackson.

TIMBERS, Chief Judge.

Defendant Jackson, charged with two other defendants in a two count indictment with violations of the Federal Kidnaping Act, 18 U.S.C. § 1201(a), and the Dyer Act, 18 U.S.C. § 2312, has moved, pursuant to Rule 41(e), Fed.R.Crim.P., to suppress statements given by him to agents of the FBI on September 13, 1966, the date of his arrest.[1]

After holding a hearing on June 3 and 4, 1968, at which testimony was received from agents of the FBI and Jackson (who was ably represented by counsel), and upon consideration of the motion, affidavits, exhibits and briefs of the parties, the Court concludes that the motion to suppress should be denied.

The Court makes the following findings of fact and conclusions of law in support of its order denying the motion.

FINDINGS OF FACT

(1) Jackson was arrested on September 13, 1966 at 7:50 P.M.[2] in front of his home in Brooklyn, New York, by three agents of the FBI pursuant to an arrest warrant issued at Hartford, Connecticut, on September 9, 1966, charging Jackson with violation of the Federal Kidnaping Act, 18 U.S.C. § 1201(a). He was informed of the charge against him at the time of arrest.

(2) Jackson was driven by the three arresting agents directly from Brooklyn to the FBI headquarters in upper Manhattan, where they arrived at 8:30 P.M.

(3) En route from the scene of the arrest in Brooklyn to FBI headquarters in Manhattan, FBI agent Stankiewicz, in the presence of the other two arresting agents, orally advised Jackson substantially as follows:

(a) That he did not have to make a statement.

(b) That anything he said could be used against him in Court.

(c) That he was entitled to a lawyer.

(d) That he would be permitted to make a phone call from the FBI office in New York to contact a lawyer.

(e) That if he could not afford a lawyer, the Court would appoint a lawyer for him.

(4) No questioning of Jackson took place en route from Brooklyn to the FBI office in Manhattan.

(5) Upon arrival at the FBI office, Jackson was photographed at 8:35 P.M. on one of the upper floors.

(6) Jackson returned to the sixth floor at 8:40 P. M. where agents Stankiewicz and Conley (hereinafter, "the agents") told him he could use the telephone. He did. After hanging up the phone, Jackson told the agents he had spoken to a friend about a lawyer.

(7) The agents then offered Jackson bathroom privileges, food and a drink of water, all of which he refused; he did accept a cup of coffee later.

1. The motion to suppress orginally was filed on November 4, 1966 and was claimed for hearing on November 28, 1966. In view of the District Court's decision dismissing the kidnaping count of the indictment, 262 F.Supp. 716, on the ground that the death penalty provision of the Federal Kidnaping Act was unconstitutional, hearing on the motion to suppress was deferred. The Supreme Court upon direct appeal likewise held the death penalty provision to be unconstitutional, 390 U.S. 570, but remanded the case to the District Court for trial on the kidnaping count construed as providing for maximum punishment of life imprisonment. Upon remand from the Supreme Court, the District Court, prior to trial, has now heard the motion to suppress.

2. The events of the evening of September 13, 1966 and the morning of Sepember 14, 1966, as testified to by FBI agents Stankiewicz and Conley, are documented by a contemporaneous log kept by these agents from the time Jackson was placed under arrest; the times of the events testified to are reflected in this log. Govt. Ex. 2.

(8) At 8:45 P.M., the agents handed Jackson a typewritten form [3] entitled "Your Rights" which he read and which agent Conley explained to him. This warning regarding his rights was substantially as follows:

(a) That he had the right to remain silent.

(b) That anything he said could be used against him in Court.

(c) That he had the right to talk to a lawyer for advice before the agents asked him any questions.

(d) That he had the right to have a lawyer present during questioning.

(e) That he had the right to the advice and presence of a lawyer even if he could not afford to hire one.

(f) That, although the agents themselves could not provide a lawyer, the Court would appoint a lawyer for him if he wished.

(g) That, if he wished to answer questions then and there without a lawyer present, he had the right to stop answering questions at any time.

(h) That he had the right to stop answering questions at any time until he talked to a lawyer.

(9) Although Jackson declined to sign the form of waiver appended to the written warning of his rights, he informed the agents that he understood the warning of his rights which he read and as explained to him by agent Conley.

(10) Jackson thereupon gave the agents certain background information about himself and his family.

(11) At 9:30 P.M., agent Conley again explained to Jackson his rights substantially as set forth in paragraph (8) above.

(12) At 9:35 P.M., Jackson said he would like to discuss the charges against him. He then proceeded to give an oral statement to the agents, including his role on September 2, 1966 with the two other defendants subsequently named in the indictment, in hijacking a truck in Connecticut at gunpoint, kidnaping the driver and transporting him to New Jersey where he was left tied up in a wooded area.

(13) From 10:30 to 11:15 P.M., Jackson's oral statement was reduced to writing[4] by agent Conley.

(14) From 11:20 to 11:30 P.M., the written statement was read by Jackson.

(15) At 11:30 P.M., Jackson acknowledged to the agents that the written statement was true and correct, but he declined to sign or initial it until he had contacted a lawyer.

(16) At 12:00 midnight Jackson was fingerprinted.

(17) At 1:00 A.M. on September 14, Jackson was taken by agent Conley to the Federal House of Detention in New York City.

(18) At 11:00 A.M. on September 14, Jackson was arraigned before a United States Commissioner in the Southern District of New York.

(19) No questioning of Jackson took place between his acknowledgement of the truth of the written statement at 11:30 P.M. on September 13 and his arraignment at 11:00 A.M. on September 14.

(20) Two FBI agents, and only two (Stankiewicz and Conley), were with Jackson at FBI headquarters from the time he returned from being photographed on an upper floor (8:40 P.M.) until he was taken to the Federal House of Detention (1:00 A.M.). Both agents were present during the warnings given Jackson at FBI headquarters and throughout the questioning.

(21) The total elapsed time between Jackson's arrest (7:50 P.M.) and his being lodged for the night at the Federal House of Detention (1:00 A.M.) was 5 hours and 10 minutes. The time spent questioning him after he said he wanted to discuss the charges against

3. Govt. Ex. 1.

4. Govt. Ex. 3.

him (9:35 P.M.) and the beginning of the written statement (10:30 P.M.) was 55 minutes; another 45 minutes was required to reduce the oral statement to writing (11:15 P.M.). The balance of the time was occupied by transporting him from the place of arrest to FBI headquarters; having him photographed and fingerprinted; offering him bathroom privileges, food and water; providing him with a cup of coffee and engaging in general conversation; permitting him to use the telephone; warning him of his rights and explaining his rights to him; obtaining general background information from him for booking purposes; and allowing him to read over his written statement before he acknowledged it to be true and correct.

(22) Jackson was fully and accurately advised of his rights on at least three distinct occasions between the time of his arrest (7:50 P.M.) and the time he began giving his oral statement to the agents (9:35 P.M.); such advice specifically included every facet of his right to counsel—his right to counsel *before* being questioned, his right to counsel *during* questioning, his right to *terminate* questioning to consult counsel and his right to *court appointment* of counsel if he could not afford to hire counsel.

(23) At no time did Jackson decline to be questioned until he could consult with counsel or until counsel could be present; on the contrary, after making a phone call to a friend about a lawyer and after being twice advised thereafter about his right to counsel, Jackson himself volunteered to discuss the charges against him, freely answered the agents' questions and acknowledged the truth and correctness of his oral statement when reduced to writing, after having read it over.

(24) Jackson is 29 years of age. He completed one or two years of high school. He can read and write. He has no impairment of speech or hearing. On the witness stand at the hearing on the instant motion, he impressed the Court as being intelligent.

(25) During his interview with the agents on the night of September 13, 1966, they found him to be cooperative. The atmosphere was relaxed, low-key and characterized by candor throughout.

(26) There was not a scintilla of coercion, intimidation, pressure, force or threats—subtle or otherwise—exerted against Jackson.

## CONCLUSIONS OF LAW

■ (1) Jackson's statements were given to agents of the FBI following his arrest pursuant to a lawful arrest warrant which had been lawfully executed. Rule 41(e), Fed.R.Crim.P.; cf. Wong Sun v. United States, 371 U.S. 471, 484–87 (1963).

■ (2) Jackson's statements were given to agents of the FBI after he had been fully and accurately advised of his Constitutional rights pursuant to Miranda v. Arizona, 384 U.S. 436, 471–76 (1966).

■ (3) Jackson's statements were given to agents of the FBI after he had intelligently and understandingly waived his right to consult with counsel before being questioned and to have counsel present during questioning; and he likewise intelligently and understandingly waived his right to terminate questioning to consult with counsel. Miranda v. Arizona, supra, at 471–76; Carnley v. Cochrin, 369 U.S. 506, 516, (1962); United States v. Vanterpool, 394 F.2d 697 (2 Cir. 1968); United States v. Anderson, 394 F.2d 743 (2 Cir. 1968).

■ (4) There was no unnecessary delay between the arrest and arraignment of Jackson. Rule 5(a), Fed.R. Crim.P.; Mallory v. United States, 354 U.S. 449 (1957); McNabb v. United States, 318 U.S. 332 (1943); United States v. Vita, 294 F.2d 524 (2 Cir. 1961), cert. denied, 369 U.S. 823 (1962) (defendant arrested in the evening and araigned the following morning); United States v. Currie, 354 F.2d 163 (2 Cir. 1965). Cf. United States v. Middleton, 344 F.2d 78, 83 (2 Cir. 1965).

84

 (5) Jackson's statements were given to agents of the FBI freely, voluntarily and without any coercion, intimidation, threats, force or pressure on the part of the agents of the FBI.

(6) Jackson's statements were given to agents of the FBI without any violation of his Constitutional rights.

 (7) Upon the entire record, the government is entitled to an order denying Jackson's motion to suppress statements given by him to agents of the FBI on September 13, 1966.

ORDER

ORDERED that defendant Jackson's motion, pursuant to Rule 41(e), Fed.R. Crim.P., to suppress statements given by him to agents of the FBI on September 13, 1966 is in all respects denied.

The Court wishes to express its appreciation to Steven I. Traub, Esq., a member of the bar of this Court, for the continued professional services in accordance with the highest standards of the bar which he and his associate court-appointed counsel, Steven B. Duke, Esq., have rendered to their client throughout this case, including the instant motion to suppress. The quality of professional services rendered by Mr. Traub and Mr. Duke in this case in the Supreme Court of the United States and in this Court represents, in my opinion, the full flowering of the Criminal Justice Act at its very best.

ORDER ON MOTIONS FOR SEVERANCE

Defendants having moved, pursuant to Rule 14, Fed.R.Crim.P., for separate trials under the two count indictment which names the three defendants in each count; and

The Court this day having entered an order denying defendant Jackson's motion to suppress statements made by him to agents of the FBI following his arrest on September 13, 1966; and

The statements by defendant Jackson appear to make reference to the other two defendants herein; it is therefore

ORDERED as follows:

(1) That the case against defendant Jackson is severed, for purposes of trial, from the cases against the other two defendants.

(2) That the separate trial of the case against defendant Jackson shall proceed on Tuesday, June 25, 1968, at New Haven.

(3) That the separate trial of the cases against defendants De La Motte and Walsh shall proceed, on a date to be fixed, after the conclusion of the trial of the case against defendant Jackson.

(4) Except as above ordered, defendants' motions for severance are denied.