UNITED STATES of America,
Appellee,

v.

Bernardo Tovar GOMEZ, a/k/a Jorge
Arturo Gaviria-Ochoa, Appellant.

No. 71–1352.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 6, 1971.

Decided March 21, 1972.

Bruce C. Bereano (Court-appointed counsel), Washington, D. C., for appellant.

David H. Hopkins, Asst. U. S. Atty. (Brian P. Gettings, U. S. Atty., on the brief), for appellee.

Before BOREMAN, Senior Circuit Judge, and CRAVEN and FIELD, Circuit Judges.

BOREMAN, Senior Circuit Judge:

On October 7, 1970, Pan American Flight 542 arrived at Dulles International Airport in Virginia after a nonstop flight from Guatemala City. All passengers were presented for customs inspection and those who were to continue to the termination point of the flight, Kennedy Airport, New York, would then reboard the plane. Appellant, a Columbian national, who had boarded the flight in Bogota, presented to Immigration Officer Turnage a Columbian passport in the name of Dr. Bernardo Tovar-Gomez, and a control document indicating his intent to visit one Rosa Giraldo in New York. Proceeding through customs appellant was directed by a Customs Inspector, Greenhouse, to empty the pockets of his jackets. After the appellant had pretensively done so, Greenhouse personally inspected the jacket and found it to contain an item not produced by appellant—a small packet of aluminum foil containing a white powder which was shown by a field chemical test to be composed of the drug cocaine.

Appellant was then directed aside to an inspection room where he was completely searched and then questioned by Agent Julian Lindenauer of the Customs Agency Service, who spoke fluent Spanish. In response to a question directed by Lindenauer the appellant stated that he was not Gomez but Jorge Arturo Gaviria-Ochoa. At this point appellant

was placed under arrest and given a standard Miranda warning. Sometime during the course of the conversation which followed Lindenauer was informed by an official that a suitcase which the appellant was carrying had been found to contain a false bottom in which five pounds of cocaine were secreted. Appellant denied any knowledge of the contents of the false bottom, stating that the suitcase had been given to him by a recent acquaintance, Juan Arango, in Bogota. He admitted taking the small packet, "out of curiosity," also from Arango. He further stated that he had received from Arango the false passport, his round trip ticket to the United States, and three hundred American dollars. He denied having been in the United States before and stated that Rosa Giraldo was a fictitious person.

Appellant was indicted as Bernardo Tovar-Gomez a/k/a Jorge Arturo Gaviria-Ochoa, and was convicted by a jury of the knowing importation into the United States of a narcotic drug, cocaine, in violation of 21 U.S.C. § 174.

At trial Lindenauer was called as a witness and undertook to testify as to statements made to him by appellant during the interrogation at Dulles Airport. Appellant's counsel objected to the admission of the inculpatory statements for the reason that they were involuntarily made to Lindenauer. Government counsel then advised the court that the prosecution was prepared to conduct an *Inman* hearing and it appears that proceedings were held out of the presence of the jury. Appellant testified before the court that when Lindenauer was momentarily absent from the room in which the interrogation was being conducted an "officious looking man in a blue shirt" warned or threatened appellant that if he did not talk or tell the truth he could "get twenty to twenty-five years." He further stated that he then made additional statements, some inculpatory and some exculpatory, to Lindenauer. Defense counsel then re-newed his objection to the admission in evidence of any statement made by the appellant during the period of questioning which followed the intimidating warning.

The court advised the parties that, if the statements to Lindenauer were found to have been made involuntarily, all of them, both inculpatory and exculpatory, would be excluded. The court was attempting to explain the result of a possible ruling in appellant's favor and made the unequivocal statement "It is either all admissible or none of it is." At that point defense counsel requested the opportunity to confer with his client and shortly thereafter stated: "Your Honor, after conferring with my client I would like to withdraw my objection." The judge made no ruling on the voluntariness of appellant's statements to Lindenauer but did indicate that, but for the withdrawal of the objection, he would have ruled at that stage of the proceedings that the statements were voluntarily made.

The appellant urges that the trial court erred in ruling that the appellant's damaging admissions made upon arrest at the time of his arrival into the United States were voluntarily made [1] and that the court erred in failing in its charge to the jury to submit the issue of voluntariness of the appellant's admissions for ultimate determination by the jury. To support this contention he relies upon two decisions of this court, United States v. Inman, 352 F.2d 954 (4 Cir. 1965), and Mullins v. United States, 382 F.2d 258 (4 Cir. 1967). Perhaps as an over-simplification of the holding in these cases it may be said that together they stand for the proposition that the trial court must make a threshold determination in a hearing conducted out of the presence of the jury of the voluntariness of proffered statements or admissions and, if found to have been voluntarily made and admissible in evidence, must advise the jury in its charge that before giving

---

1. As above stated, the record discloses that the court made no such ruling.

any weight to such statements or admissions the jury must be satisfied beyond a reasonable doubt that the statements or admissions were made voluntarily. The appellant emphasizes that these cases specifically direct that these procedures should be followed by the trial court even in the absence of an objection to the admission of the statements or in the absence of a request for a specific instruction to the jury as to voluntariness.

We reach the conclusion, however, that in the circumstances of this case appellant's reliance upon *Inman* and *Mullins* is misplaced. The transcript of the trial indicates clearly a strategic waiver of objection to the admissibility of the statements and, this having been done, no jury instruction, such as the one now suggested by the appellant, could logically have been given at trial. As shown, appellant's counsel objected to the *admission in evidence* of the statements in question and the court was then advised that the Government was prepared to conduct an *Inman* hearing. After certain witnesses, including the appellant, had been heard out of the presence of the jury and after the court's reference to the admissibility of "all or none" of the statements, counsel conferred with the appellant and thereupon withdrew the objection to admissibility. It was manifest that appellant desired the benefit before the jury of his exculpatory statements and his persistent denial from the moment of his detention of knowledge of the nature of the articles which he had to admit had been imported by him into the United States. The language found in Johnson v. United States, 318 U.S. 189, 201, 63 S.Ct. 549, 555, 87 L.Ed. 704 (1943), is pertinent here:

> "We cannot permit an accused to elect to pursue one course at the trial and then, when that has proved to be unprofitable, to insist on appeal that the course which he rejected at the trial

be reopened to him. However unwise the first choice may have been, the range of waiver is wide. Since the protection which could have been obtained was plainly waived, the accused cannot now be heard to charge the court with depriving him of a fair trial. The court only followed the course which he himself helped to chart and in which he acquiesced until the case was argued on appeal."

■ We conclude that a decision was clearly made by trial counsel that it was to the advantage of his client to have the exculpatory statements admitted in evidence. In the face of this knowledgeable and deliberate choice of trial strategy the judge would have been chargeable with error if he had undertaken to instruct the jury as appellant now claims he should have done. In United States v. Anderson, 394 F.2d 743, 747 (2 Cir. 1968), the court stated that such a submission to the jury "raises a further question of interference with the trial tactics of the defendant. Whatever may be the rationalization for the ultimate submission of the coercion issue to the jury under the Massachusetts procedure, a compulsory requirement without a request in every case may deprive the defendant of the very protection he seeks." If the judge had instructed the jury that the voluntariness of appellant's statements was a matter for their determination and that they should disregard all such statements if found to have been involuntarily made the appellant would have been deprived of any benefit he sought to derive from the early admission of his own exculpatory statements, particularly his denial to the officials of all knowledge of the nature of the articles imported by him into the United States.

■ As a general principle it may be stated that a constitutional privilege may be waived when knowingly done as a part of trial strategy.[2] The conscious,

2. Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); Parker v. United States, 184 F.2d 488 (4 Cir. 1950).

deliberate waiver of any objection to the admissibility of an alleged confession is not a novel matter before the courts.[3] The real issue in this case was one of willfulness, whether the appellant had knowledge of the contents of the package in his coat pocket and the five pounds of cocaine found in the false bottom of the suitcase which he carried upon his arrival in the United States. It was certainly a permissible and reasonable trial tactic by the defense to show to the jury that at all times from the very moment of his arrest the appellant protested his innocence, stating that it was his friend, Arango, who supplied him with the packet and the suitcase, and that appellant had no knowledge of the contents of either item. In his testimony when the trial resumed before the jury appellant detailed the conversations which he had with the Customs officials and he even proceeded to amplify and embellish his exculpatory statements. His withdrawal of his initial objection to the admission of his statements and his explanatory testimony at trial clearly indicate a decision on his part to rest his defense upon minimizing the effect of his damaging admissions rather than upon the issue of involuntariness because of claimed intimidation or coercion by an unidentified person. Any alternative rights he may have had were thus waived. United States v. Anderson, 394 F.2d 743 (2 Cir. 1968).

We refuse to permit the appellant to elect one course of action at trial and then, when that proves to be unsuccessful, insist that the trial court erred in not following another course which he so obviously rejected.

Affirmed.

CRAVEN, Circuit Judge (concurring):

I readily concur but dissociate myself from any implication in the court's opinion of renewed approval of the rule of

United States v. Inman, 352 F.2d 954 (4th Cir. 1965). I have never been persuaded that it is sensible to require the voluntariness of proffered statements to be determined first by a judge and then by a jury. See Lego v. Twomey, 404 U.S 477, 92 S.Ct. 619, 30 L.Ed.2d 618.

---

3. *See* Application of Reynolds, 397 F.2d 131 (3 Cir. 1968); United States ex rel. Reid v. Richmond, 295 F.2d 83 (2 Cir. 1961).