**UNITED STATES of America**

v.

**Guy Stephen WERTZ, George William Vaughn, Thomas Jefferson Clyburn.***

**Crim. No. 79–13.**

United States District Court,
D. South Carolina,
Greenville Division.

July 27, 1979.

* *Editor's Note:* The opinion of the United States District Court, N.D. Georgia in *Kaleidoscope, Inc. v. Scroggins*, published in the advance sheets at this citation (492 F.Supp. 1027), was withdrawn from the bound volume publication and will be republished in Bankruptcy Reporter.

O. W. Bannister, Jr., Greenville, S. C., for Guy Stephen Wertz.

Will T. Dunn, Jr., Greenville, S. C., for George William Vaughn.

Charles V. Bell, Charlotte, N. C. and Donald James Sampson, Greenville, S. C., on brief, for Thomas Jefferson Clyburn.

William A. Coates, Asst. U. S. Atty., Greenville, S. C. (Thomas E. Lydon, Jr., U. S. Atty., Greenville, S. C., on brief), for U. S.

## ORDER ON MOTION FOR A NEW TRIAL

HEMPHILL, District Judge.

Defendants'[1] motion for a new trial, duly noted, was heard by this court, at Greenville, July 5, 1979. The grounds for the motion are that the court should have suppressed[2] certain testimony as hereinafter revealed.

Defendants seek to suppress certain statements made by the defendant Vaughn after Drug Enforcement Agent Odis Rousseau pointed a pistol at Vaughn's midsection.

Prior to trial Vaughn had made a suppression motion, but this was abandoned as it appeared that there were no grounds upon which the motion could be based. At that time, neither attorneys for the government, nor defendants were aware that Agent Rousseau had pointed a pistol at Vaughn.

On the day of trial, the United States Attorney advised counsel for all defendants that a pistol had been utilized by Agent Rousseau. No motion was made at this stage for a suppression hearing. The knowledge of counsel as to the pistol was amply demonstrated in the opening remarks of Attorney Charles Bell:

They have got another man, who is an agent in the case, Rousseau, Officer Rousseau. I think the evidence will show he drew a gun on a man, drew a pistol on a man, and told him, "Get me some heroin." That's the type and quality of the evidence that they are asking you for a conviction on in this case.

I have been practicing law since 1951 and I have never heard of the type of case that the government intends to present to you today for your consideration to convict all of these men.

A man, an agent, draws a gun on another man and tells him, "Take me to some heroin, take me to where that heroin is. I paid you for it."

Puts a gun in his back, right here in a public place, threatens to kill him, threatens to shoot him, before he delivered him the heroin and they said an agreement was entered into.

How can any of these people anticipate a federal officer drawing a gun on a man and making him deliver some heroin to him? That is the type of case, that is the quality of case, and that is how low this case is. I ask you to look to it in that light.

(Tr. 17–18).

Indeed, the government submits, this statement outlines the theory upon which the defense tried the case; i. e., that there was no heroin until Rousseau forced the defendants to produce drugs.

---

1. The motion was made by defendant Wertz. By voice of counsel, the others joined in the motion, and asked that the court consider the motion as made to all defendants. The court accepted the oral motions as if written.

2. Counsel claim the motion(s) to suppress could not be timely made under provisions of

Rule 12(b)(4) "because of lack of knowledge that the facts would reveal those matters disclosed at the trial" (discussed herein). Rule 12(b)(4) provides:
 Pleadings and Motions Before Trial; Defense and Objections.
 (4) Requests for discovery under rule 16;
 · · · · ·

Subsequent to opening statements by all counsel, Agent Rousseau testified. No motion to suppress any statements was made before, during, or after Rousseau's testimony.

At the conclusion of the trial, the defendants requested, and were granted, a charge to the jury concerning the effect of coercion by a government agent. The following was charged:

> In this case, one of the defendants has claimed coercion, which would be the claim of all the defendants. Coercion or compulsion may provide legal excuse for the crime charged in the indictment.
>
> In order, however, to provide a legal excuse for any criminal conduct, the compulsion must be present and immediate and of such a nature as to produce a well-founded fear of, and there must be no reasonable opportunity to escape the compulsion without committing the crime or participation in the crime. Acts done under such compulsion or coercion are not done willfully.
>
> If the evidence in the case leaves you with reasonable doubt, the defendant, at the time and place alleged in the indictment, acted or failed to act willfully and voluntarily and not under compulsion or coercion or duress, as just explained, it is your duty to find such defendant not guilty.

(Tr. 38–39).

 As has been demonstrated, defendants, having been apprised of Agent Rousseau's utilization of a firearm *prior* to the commencement of the trial, did not move to suppress any statements made subsequent to the pistol being displayed. In fact, they used the pistol as the linchpin of their defense. They now wish the court to grant a new trial because their combined strategy resulted in this conviction.

As a general rule, motions to suppress evidence must be made prior to trial. Fed. R.Crim.P. 12(d). Failure to make such motions is a waiver of any objection to the admissibility of evidence. *United States v. Rollins*, 522 F.2d 160 (2nd Cir. 1975), *cert. denied* 424 U.S. 918, 96 S.Ct. 1122, 47 L.Ed.2d 324 (1976). As defendants recognize, Fed.R.Crim.P. 12(f) provides for relief from such waiver for good cause shown; however, the defendants have not shown good cause why the requested relief should be granted.

To grant defendants' motion would, in effect, give them two bites of the apple. "We cannot permit an accused to elect to pursue one course at trial and then, when that has proved to be unprofitable, to insist on appeal that the course which he rejected at the trial be reopened to him." *Johnson v. United States*, 318 U.S. 189, 201, 63 S.Ct. 549, 555, 87 L.Ed. 704 (1943). See also *United States v. Gomez*, 457 F.2d 593 (4th Cir. 1972). In the face of the fact that trial counsel knew prior to trial of the conversation between Rousseau and Vaughn, this court concludes a decision was made by trial counsel that it was of advantage to their clients to have Rousseau pointing the gun. Even a constitutional privilege may be received as a part of trial strategy.

The defendants have not shown good cause for relief, as they had several opportunities to object to the testimony yet did not do so. A defendant has no right to a *Jackson v. Denno*[3] hearing in the absence of a motion to suppress. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1976). Therefore, defendants' request should be denied.

By defendant Vaughn's own testimony, he made no admission or statement incriminating himself. (Tr. 159–160, 164). Therefore, there was no violation of a protected right which would require suppression. "The limitations of the Due Process Clause of the Fifth Amendment come into play only when the government's activity in question violates some protected right of the *defendant*." *Hampton v. United States*, 425 U.S. 484, 490, 96 S.Ct. 1646, 1650, 48 L.Ed.2d 113 (1975). The facts here reveal that defendants and the undercover agent

---

3. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

*unwittingly* worked together, although the drug dispensers intended a "rip-off" of the agent.

Additionally, there is ample evidence that the statement, however construed, was not involuntary. Despite the defendant Vaughn's self-serving testimony that he was scared, his remarks and actions in response to Agent Rousseau indicate a contrary conclusion.

> *Agent Rousseau*: I asked Vaughn—I told Vaughn, "You have ripped me off and I want to know where the dope is or I want my money back."
>
> Vaughn acted like he didn't know what I was talking about, and at that point I pulled my revolver on him and told him, in quotes, "You mother fucker, we will find out where this dope is tonight."
>
> At this point Vaughn departed his vehicle and he stated to me, "Shoot me, mother fucker, you won't make it out of this parking lot alive. I have cousins and relatives all over this town."
>
> And we proceeded to argue. At that point I again drew my pistol, cocked it—
>
> *Mr. Lydon*: Wait a minute. When did you put your pistol up?
>
> A. Well, put it back in my side.
>
> Q. Before or after he got out of the car?
>
> A. ·After he got out of the car.
>
> Q. Did he at any time—after you put your pistol up, did he ever touch you, sir?
>
> A. Yes, he did.
>
> Q. What did he do to you?
>
> A. He merely gave me a shove.

(Tr. 32, 33).

Vaughn was obviously not afraid of Agent Rousseau inasmuch as he shoved him and dared Rousseau to shoot him. On the contrary, Vaughn wanted to deal drugs with Rousseau in the future.

Deception by undercover tactics in order to obtain evidence has been approved by the Supreme Court. See *Hampton v. United States, supra.* Here the defendants mis-placed their confidence in dealing with Agent Rousseau. They cannot now complain because he completely carried out his deception by acting as a drug dealer would act under similar circumstances.

■ Defendant's argument for suppression of the heroin is without merit. Vaughn testified that he did not state where any heroin was secreted, but only directed Agent Rousseau to the confidential informant. The heroin had already been delivered and would have been discovered upon return to the confidential informant's house. Vaughn's statement merely accelerated the obtaining of the heroin; consequently, there was no taint, and the heroin stands independent of Vaughn's statement. See *United States v. Seohnlein,* 423 F.2d 1051 (4th Cir. 1970); *United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1977).[4]

Defendants are, in essence, requesting to be allowed to retry the case using another defense because their initial strategy failed. After adequate notice, they elected not to challenge the circumstances of Vaughn's statements and relied on coercion as a defense. Having done so, they should not be allowed a reversal *ex post facto.*

The Motion is denied.

AND IT IS SO ORDERED.

---

**4.** The issue of whether Vaughn's statements and actions were voluntary were clearly before the jury.